WARREN H. MANADUE *v.* ISAAC FRANKLIN and another.

Where, by agreement between the parties, a judgment has been confessed, on an express stipulation of certain conditions as to the time and manner of its execution, the conditions will be obligatory.

THE plaintiff applied to the District Court of the parish of Rapides, *Boyce*, J., for an injunction to stay all further proceedings by the defendant Franklin, and James M. Wells, sheriff of that parish, under an execution in favor of *Franklin*, on a judgment against William B. Williamson, Eli M. Justice, and himself. The injunction was granted, and a judgment rendered as stated in the opinion of the court, from which Franklin appealed.

*Brewer*, for the plaintiff.

*Brent* and *Ogden*, for the appellant.

MARTIN, J. The petition states that in November, 1837, the present defendant obtained a judgment against Wm. B. Williamson, Eli M. Justice, and the present plaintiff, *in solido,* for the sum of twenty

thousand three hundred and eighty-eight dollars, with ten per cent interest on different parts thereof from different periods. This judgment was entered by consent, with a stay of execution until the 1st of March, 1838, when on payment of six thousand dollars a further stay was to be had, &c. The sum for which judgment was thus taken, was the price of a number of slaves bought by Williamson, then in community with his wife, the plaintiff's mother. The judgment recognizes Franklin's mortgage and privilege as the vendor of those slaves, and it was agreed that the judgment should be first executed upon them. In November, 1838, Williamson absconded, without having paid the second instalment, and leaving several other debts unpaid. A few days afterwards, the aforesaid slaves, or a large number of them, with other community property, were seized on an execution issued on said judgment, but on the 7th day of January, 1839, the community was dissolved by her death.

The community property was sold under a decree of the court of probates, with the exception of the real estate, including that which had been seized as aforesaid, on a credit of twelve months. The above judgment debt was the oldest judgment of record, and had precedence of all other mortgages. The amount of probate sales was twenty-nine thousand dollars. Franklin made no opposition to these probate proceedings. In February, 1839, a further sale of community property was effected, and produced ten thousand and sixty-nine dollars. At the maturity of the notes taken at those sales, the estate of the late wife of Williamson was unrepresented, and continued so until sometime in December, 1840, when the present plaintiff qualified as administrator, and was advised by Franklin to divide these notes among the community creditors. Accordingly, with the consent of the other creditors, Franklin received several of these notes, amounting to nineteen thousand dollars, and agreed to take the present plaintiff's personal obligation for the balance of the judgment; nevertheless, Franklin has caused an execution on his judgment to be levied on a tract of land owned partly by the said community, and partly by the late wife of Williamson, the present plaintiff's mother, in contempt of his engagement aforesaid. On a petition to that effect, the sale of the above tract of land was enjoined. All the allegations of the petition were denied. The district court sustained the injunction until such por-

tion of the price of the mortgaged slaves mentioned in the judg-
ment of Franklin against Williamson, Manadue, and Justice, as
Franklin may be entitled to, shall first be applied to the payment of
said judgment, and until such dividend as he may be entitled to
from the proceeds of the property of the community of William B.,
and Delilah Williamson shall be applied likewise in a regular
course of administration, and ordered that until then he be not per-
mitted to take out execution against the property of the present
plaintiff. The defendant, Franklin, appealed. The record shows
that one of the conditions of the confession of judgment was that
the mortgaged slaves should first be proceeded against, and that
the community property should be held liable before execution
should issue against Williamson's co-defendants, Justice, and the
present plaintiff. The inventory of the succession of Delilah Wil-
liamson, and of the property of the community between her hus-
band and herself, amounted to one hundred and seven thousand
nine hundred and thirty three dollars. The plaintiff is curator of
Williamson, an absentee, and administrator of the estate of Delilah
Williamson, his mother. Williamson, before his departure, had
paid the first six thousand dollars, on the payment of which the
issuing of the execution was to be protracted. Brent, Franklin's
attorney, deposed that he received from the present plaintiff, as
administrator of his mother, notes resulting from the sale of her
estate, to the amount of eighteen thousand dollars; he did not give
any receipt therefor, conceiving they were put in his hands that
he might apply the proceeds to Franklin's judgment; and on his
cross-examination, he repeated that he had not received the notes in
payment of the judgment, but that he was to apply the proceeds
thereto. The sheriff deposed, that Brent in handing him the exe-
cution, instructed him to levy on the slaves specified in the execu-
tion; and the plaintiff being requested to point them out, replied
that they had been sold at probate sale, except four which were in
his possession, and which he declined to point out. This being re-
ported to Brent, he directed the execution to be levied on the land.
The statement of facts further shows, that the plaintiff finding that
Brent considered the notes as placed in his hands merely for the
purpose of collection, desired that he might return them, and that
he might make another appropriation of them. We have consider-

ed this case in the point of view most favorable to the defendant, which is, as his attorney declares, that the plaintiff gave him notes, the proceeds of the sale of the community property, including the mortgaged slaves, for collection, on a promise that the proceeds should be applied to the discharge of the judgment.   This judgment was confessed on an express stipulation that the execution should be first levied upon those slaves.   With the consent of Franklin, the plaintiff in that suit, those slaves were sold, with other property of the community; and he consented to receive the notes of the purchasers, and to apply the proceeds of them to the discharge of the judgment—in other words, to exercise on the proceeds of those notes, the rights which he was bound to exercise upon the slaves.   The district court, therefore, correctly held him to a strict performance of his engagement.   A second stipulation in the confession of judgment was, that the property of the co-defendants of Williamson should not be levied on, until the community property was exhausted.

*Judgment affirmed.*