# Charleston,

## LOCKHARD & IRELAND *v.* BECKLEY *et al.*

(Absent, MOORE, JUDGE).

Decided April 28, 1877.

1877.
January Term.

1. Where a husband or father purchases land in the name of a wife or child, or in his own name, and in either case procures a conveyance to be made to the wife or child, there is no resulting trust for the husband or father, as in the case of a purchase by one and a conveyance to a stranger.

2. But such a deed, if made with intent to hinder, delay, or defraud the creditors of the party so purchasing, may, at the suit of such creditors, be impeached, being within the statute against fraudulent conveyances.

3. Unless such a deed is fraudulent in fact as to creditors, prior or subsequent, improvements afterwards put upon the property by the husband or father cannot be subjected by creditors to the payment of their debts, unless such improvements were put upon the property with intent to hinder, delay or defraud the creditors of the husband or father.

4. A voluntary conveyance which interferes with, or breaks in upon the rights of existing creditors, will not be permitted to take effect to the prejudice of their just demands, but as to such creditors is absolutely void, without regard to the amount of the debts, the extent of the property so conveyed. the motives that prompted the settlement, or the condition or circumstances of the party at the time.

5 The second section of chapter seventy-four of the Code of West Virginia makes a clear distinction between the rights of existing and subsequent creditors, as to a voluntary conveyance; and such a conveyance cannot be impeached by subsequent creditors on the mere ground of its being voluntary, and the

| | |
|---|---|
| 10 | 87 |
| 34 | 185 |
| 10 | 87 |
| 36 | 17 |
| 36 | 285 |
| 10 | 87 |
| 38 | 259 |
| 10 | 87 |
| 40 | 25 |
| 10 | 87 |
| 41 | 157 |
| 41 | 278 |
| 41 | 335 |
| 10 | 87 |
| 45 | 346 |
| 10 | 87 |
| 52 | 51 |
| 10 | 87 |
| 53 | 296 |
| 10 | 87 |
| 54 | 458 |
| 54 | 461 |
| 54 | 467 |
| 10 | 87 |
| 55 | 497 |
| 10 | 87 |
| 65 | 363 |
| f65 | 645 |
| 65 | 681 |

party making it, or at whose instance it was made, being indebted to some extent, if there be no actual fraudulent view or intent in the party at the time.

6. But if it be shown that there was *mala fides* or fraud in fact, in the transaction, whether the actual fraudulent intent relates to existing creditors or is directed exclusively against subsequent creditors, the effect is precisely the same, and subsequent creditors may, upon the strength of such fraud, successfully impeach the conveyance.

7. While it is true under the second section of chapter seventy-four of the Code of West Virginia, a voluntary conveyance, as to subsequent creditors, is not void merely on the ground that it was voluntary, and the party indebted at the time it was made; yet upon the question whether it is fraudulent in fact, it is proper to consider the circumstances of its being voluntary, and the party indebted at the time; and if additional circumstances connected with these two be sufficient to show fraud in fact, it is void as to subsequent creditors.

8. Although fraud in fact must be shown to impeach a conveyance as to subsequent creditors, it is not required that the actual or express fraudulent intent appear by direct and positive proof; circumstantial evidence is not only sufficient, but in most cases is the only evidence that can be adduced.

9. Fraud is to be legally inferred from the facts and circumstances of the case, when those facts and circumstances are of such a character as to lead a reasonable man to the conclusion that the conveyance was made with the intent to hinder, delay or defraud existing or future creditors.

10. Although the deed is void as to the creditors of the debtor at whose instance it was made, yet the title of the innocent purchasers for valuable consideration, will not be affected thereby, they not having any notice of the fraudulent intent of their immediate grantor, or of the fraud, rendering void the title of such grantor; but the purchase money unpaid should be subjected to the payment of the creditors as to whom the deed is void.

An appeal upon the petition of Isaac C. Beckley, Mary R. Beckley and John Price Duncan from a decree of the circuit court of Raleigh county, rendered on the 10th day of October, 1873, in a cause then pending in said court, wherein Charles O. Lockhard and Thomas S. Ireland, partners in trade under the name of Lockhard

& Ireland, were plaintiffs and Isaac C. Beckley and others were defendants.

The Hon. Evermont Ward, Judge of the ninth judicial circuit, presided at the hearing below.

The case is sufficiently stated by Johnson, Judge, who delivered the opinion of the Court.

*H. W. Brazie,* for appellees, referred to the following authorities:

*Boyd v. McLean,* 1 Johns. (N. Y.) Ch., 582; *Botsford v. Burr,* 2 Johns. (N. Y.) Ch., 406; Adams Eq. 33; Code W. Va., 474, §5; Code Va. 1860, p. 570, §4; *Hariston v. Randolphs,* 12 Leigh, 445; *Lemon's Case,* 4 W. Va., 755; 2 Story Eq., 1216; 1 Story's Eq., §391-2; *Evans v. Bechrell,* 6 Ves., 192; *Clifford v. Brooke,* 13 Ves., 132; *Claytor v. Anthony,* 6 Rand., 306; *Hildreth v. Sands,* 2 Johns. (N. Y.) Ch., 35; 2 Lomax. Dig., 324; *Penn v. Whiteheads,* 12 Gratt., 74; *M. E. Church et al. v. Jaques et al.,* 1 Johns. (N. Y.) Ch. 450; Code W. Va., ch. 66; 2 Story's Eq., 1201; 2 Story's Eq., 1195.

*James M. Laidley,* for appellees, referred to the following authorities:

Story's Eq. Jur., §1374; Bump. on Fraud. Con., 296; *Pennock et al. v. Coe, trustee,* 23 How. 117.

*Henry J. Gellaspie,* for appellants, relied upon the following authorities:

Bump. on Fraud. Con., 15; *Vanbibber v. Beirne,* 6 W. Va., 168; Code of Va., 1860, ch. 121, §2; Acts 1863, pp. 1, 16; Story on Agency, 188, 192, 204-5-6; *Carper et al. v. McDowell,* 5 Gratt., 212; 1 Wash. on Real Estate, 249; *Bryan v. Stump,* 8 Gratt., 241; *McNeale v. Governor, for Clarke,* 3 Gratt., 299; 3 Green. Ev., 218 n.; *McKim v. Moody et al.,* 1 Rand., 58.

1877.
January Term.

STATEMENT OF THE CASE BY THE JUDGE:

Lockhard & Ireland
v.
Beckley et al.

In July, 1870, the firm of Lockhard & Ireland recovered in the circuit court of Raleigh county a judgment against I. C. Beckley for $788.44 and the costs of the suit; a *fi. fa.* issued, and on the 3d day of October, 1870, was, by the sheriff of the county, returned endorsed "No property found." At June Rules, the complainants filed their bill in the circuit court of Raleigh county to enforce their judgment lien, and alleged in their bill and amended bills, several of which were filed, the recovery of the judgment, the execution issued and returned "No property," that the defendant I. C. Beckley had no personal property, but had a tract of one hundred acres of land in Raleigh county to which he had the legal title; and that he was the equitable owner of a tract of about four acres of land near Raleigh C. H., including a tavern building known as the "Raleigh House," and charged that said Beckley had bought said property of his father and had paid him for it, yet with intent to hinder, delay and defraud his creditors, and those who might become his creditors, he had fraudulently combined with his father and his wife and one John Price Duncan, and had procured the conveyance of said property to be made by his father and wife to said John Price Duncan, as trustee for Mrs. Mary R. Beckley, the wife of the said Isaac C. Beckley; a copy of which conveyance is found in the record. The bill charged that Mrs. Mary R. Beckley had no property of her own before her marriage with Isaac, and the said settlement on her was made in fraud of both existing and future creditors; that said Mary R. Beckley and her said trustee, both knew that said Isaac C. Beckley had reported the said property as his; that he had repaired it at a cost to himself of $1,000, put an advertisement of it as a hotel in a newspaper, in which he proclaimed to the world that it was his; that by reason of these representations and the conduct of Mrs. Beckley, and the said trustee, complainants were in-

duced to give credit to the said Isaac C. Beckley. One of the amended bills charge that since the institution of the suit the said Isaac C. Beckley and wife, and John Price Duncan, the trustee, had conveyed said property to Jas. T. and John W. McCreery for the sum of $2,500; that $1,000 of the purchase money had been paid and a lien had been reserved for the payment of the residue of the purchase money thereof. A copy of said deed is also filed. There is no charge in the bill that when their suit was instituted they had recorded a *lis pendens*, or that the McCreerys had any notice of the fraud in the conveyance to John Price Duncan, the trustee. They pray that the deeds may be cancelled, and that the land may be sold to pay their judgment, or that the McCreerys, against whom also an amended bill was filed, should out of the money they yet owed on the property pay the said judgment, costs, &c. The defendant, Isaac C. Beckley, filed four answers to the original and amended bills, in neither of which does he show the circumstances under which the deed was executed, or the purpose he had in view when he requested his father to make the deed to a trustee for the benefit of his wife. He contents himself with simply denying in general terms " all fraud and combination." In his first and second answers, he is entirely silent as to the charge that he was indebted at the time the conveyance was made; in his third he says, " at that time he owed very little and has since paid all he then owed." In his last answer he denies that he owed anything at the time the deed was made. All of the defendants answer, and in general terms deny the fraud charged; but there is no denial in any of the answers of the charge that Beckley represented the said property as his, and that his wife and her trustee, with full knowledge that he did so, never protested against it.

The record shows that Isaac C. Beckley, one of the defendants, in the city of Cincinnati, about the 31st of August, 1868, applied to the complainants, Charles O. Lockhard and Thomas S. Ireland, dry goods merchants

1877.
January Term.

Lockhard & Ireland
v.
Beckley et al.

trading as Lockhard & Ireland, to purchase a bill of goods, and represented to them that he was heir to property in Pittsburgh, left him by his grandfather, amounting to $10,000; that he had received two remittances from that source of three thousand dollars each, and expected another shortly after, when he would pay for the goods; that he also had unincumbered real estate in Virginia worth five or six thousand dollars.

Upon this representation they sold him a bill of goods amounting to $780.03, took his note therefor, due in thirty days.

From all that appears in the record, the fortune left him in Pittsburgh by his grandfather, consisted of a mortgage which his grandfather held on his (I. C. Beckley's) father's property, and which was left by will to said Isaac and his brother Alfred jointly, and amounted, principal and interest, to the sum of $1,200 or $1,300. With this mortgage Isaac bought of his father the tract of about four acres of land near Raleigh C. H., on which there was a tavern building known as the " Raleigh House ;" this property, so bought of his father by Isaac and paid for by him, was on the 23d day of August, 1867, at the said Isaac's request, conveyed by his father, Alfred Beckley, Sr., and Jane B. Beckley, his wife, " to John Price Duncan, in trust for the benefit and behoof of Mrs. Mary R. Beckley, the wife of Isaac Craig Beckley, and the lawful issue she had, or might have by the said Isaac C. Beckley." This deed was acknowledged the same day, and on that day, admitted to record. In the fall of 1867 and spring of 1868, after the said deed was on record, and before the bill of goods was bought from the complainants, Isaac C. Beckley, at his own expense, put repairs on said " tavern house " to the amount of $1,000, and was occupying the house as a tavern at the time he bought the goods of the complainants. The deposition of Holt, shows that at different times he heard Isaac C. Beckley, in the presence of Duncan, the trustee, and the wife of said Isaac, claim to be the owner of said

property, and said how he intended to fix up the same,

and on one occasion, in his own name, sued a man by the name of Ferguson for fitting up a room for him in the said tavern house, and in said action claimed to own the property, and that he never heard the trustee or Mrs. Mary R. Beckley dispute in any way, the right of said Isaac C. Beckley to the said property. As late as the 16th day of April, 1870, the said I. C. Beckley, in his own name as proprietor, inserted a notice in a newspaper published in his section of the State, saying he had bought the said hotel and thoroughly repaired and furnished it, and was ready to accommodate guests, &c. A short time before the said conveyance was made to the said trustee, he asked the witness Holt, who is a lawyer, " whether he could not have the said tavern property conveyed to his wife, and whether it would prevent his creditors from subjecting it to his debts; that he had bought it of his father and paid him for it, and that he wanted to reserve the tavern property as a home for his family; he stated at the time that he was in debt." The witness Holt also says, " I was in the clerk's office of Raleigh county, and I heard a conversation between Gen. A. Beckley and John Rodgers, the then clerk of said court; I heard Gen. A. Beckley say to the said John Rodgers that his son Isaac C. Beckley was in debt and was expected to be sued, and that he, A. Beckley, intended to deed the tavern property, in the bill mentioned, to Isaac C. Beckley's wife, or to a trustee, for her benefit, so that Isaac C. Beckley's creditors could not subject the property aforesaid to the payment of their debts." The record shows that Rodgers is dead, and his deposition was not taken. Gen. Beckley's deposition is taken twice, and in regard to the above stated conversation says, " I do not recollect having any such conversation with John Rodgers in the presence of Martin H. Holt, and do not think it at all likely that I had that conversation. I have no recollection of having had, before or since the conveyance, any conversation with the late

1877.
January Term.

Lockhard & Ire-
land
v.
Beckley et al.

John Rodgers." And, in answer to a further question, he said, " I do not recollect having any such conversation, and do not think I ever had any such conversation."

Being asked why he made the said conveyance to a trustee for the benefit of his son's wife, he answered, " I did so from a principle of prudence, believing and knowing my son Isaac to be a very impulsive, imprudent young man." In answer to the question " Was or was not Isaac C. Beckley much indebted at the time of the conveyance?" said, " At the time of the conveyance I considered Isaac C. Beckley solvent and fully able to pay his debts." There was no provision whatever made for the payment of existing debts, and while several witnesses say he had property, they do not disclose what it was, and the record does not show that he had any other property whatever, except the one hundred acres of land described in the bill. None of the answers aver that he had any other property, except that the joint answer of all the defendants avers that at the time of the conveyance, Isaac owed nothing, and was worth $4,000 or $5,000." In one of Isaac's separate answers he says, " At the time of said conveyance this defendant was able to pay at least $2,000 or $3,000 over and above his liabilities." In his other two answers he says nothing about his indebtedness, except in his first he says, "there is a decree in favor of Dickinson, Price & Bishop against respondent for the sale of the one hundred acres of land referred to in said bill, to satisfy a judgment due them." This first answer appears to have been filed on the 23d day of April, 1872.

There is nothing in the record to show when Dickinson, Price & Bishop recovered their judgment against I. C. Beckley. It appears that said Dickinson, Price & Bishop, E. A. Hutchison & Co., and L. Katzenberger & Co., on the 10th day of October, 1873, filed their petitions praying to be made parties plaintiff in the cause, and for the same relief sought by the bill and amended bills of the plaintiffs; and defendants waived service of

process on the same.    These petitions and the answer of

Isaac C. Beckley show an indebtedness certainly, but when these debts were contracted the record does not disclose. The goods purchased of the complainants were taken into another county and sold in 1869, and on the 3d day of October, 1870, the *fi. fa.* issued on plaintiffs' judgment was returned " No property," and there was no real estate of said Isaac except the tavern property, and the one hundred acres that Isaac says in his first answer was decreed to be sold to pay the claim of Dickinson, Price & Bishop. Upon this state of facts, on the 10th day of October, 1873, the circuit court of Raleigh county rendered a decree, holding the repairs only, upon the property, amounting to $1,000, liable to be paid to the creditors of the said Isaac C. Beckley, and ordered that amount of money to be paid to the receiver of the court by the defendants J. W. and James T. McCreery, they having answered that they yet owed $1,300 of the purchase money—$550 due November 10th, 1872, and $750 November 10th, 1873, on said property ; and the cause was referred to a commissioner to ascertain and report the liens on said fund, their priorities, &c.

From this decree the defendants, I. C. Beckley, Mary R. Beckley, his wife, and John Price Duncan, trustee, appealed.

JOHNSON, JUDGE :

The appellees as well as the appellants insist that the decree is erroneous.

The appellees claim that the acknowledgment of the deed from Alfred Beckley, Sr., and Jane B., his wife, is fatally defective, and for that reason it cannot stand in the way of their demand against Isaac C. Beckley.

This being a, point not raised in the pleadings, and the deed being void on another ground, it is unnecessary to consider the question.

It is also claimed by the appellees that as the purchase money was paid by I. C. Beckley, and the convey-

ance made to John Price Duncan as trustee for his wife, that the said trustee, in equity, holds it for the husband. Where a husband or father purchases land in the name of a wife or child, or in his own name, and in either case causes a conveyance to be made to the wife or child, there is no resulting trust for the husband or father, as in the case of a purchase by one and a conveyance to a stranger. 2 Lomax Dig. 337, §29.

But such a deed, if fraudulent, may be impeached at the suit of creditors of the party so purchasing, being within the statute against fraudulent conveyances. *Sexton v. Wheaton*, 8 Wheat., 229. At one time there seems to have been a doubt whether such a conveyance was within the statute, but in *Stileman v. Ashdown*, 1 Atk., 477, Lord Hardwicke held that a purchase by a father, and conveyance to a child, might be impeached for fraud, either by a creditor of, or purchaser from the father. Judge Green, in *Coleman v. Cocke*, 6 Rand., 640, after referring to Lord Hardwicke's opinion in *Stileman v. Ashdown*, said, " And deplorable indeed would be the imbecility of the law if it could not reach such a case as that under consideration." In that case the father had purchased in his own name, and not in the name of his children, and caused a conveyance of two tracts of land to be made to his son, and afterwards, for the consideration of $1, that son conveyed a part of the land, at his father's request, to his brother.

It is claimed by the appellants that it was error to subject the repairs upon the house to the payment of the debts of I. C. Beckley. If there was no fraud in the deed, the debt due complainants having been contracted *after* the conveyance, and *after* the repairs were put upon the house, the property could not be charged with the repairs at the suit of subsequent creditors, for the obvious reason if the husband had the right to make a gift to his wife of the " tavern property," which his subsequent creditors could not take from her, for a stronger reason he had the right to give the repairs, unless the

1877.
January Term.

Lockhard & Ireland
v.
Beckley et al.

repairs were put upon the property in fraud of creditors. In *Sexton v. Wheaton*, 8 Wheat., 229, Chief Justice Marshall says, " The claim for the improvements stands on the same footing with that of the lot. They appear to have been inconsiderable, and to have been made before these debts were contracted." I am unable to perceive upon what principle the circuit court could have held the improvements liable if the lot itself was not. If the conveyance itself cannot be impeached for fraud by the pleadings and proof in the cause, then the improvements cannot, because there is not as much proof to show that the improvements were put on the property in fraud of creditors, as there is to impeach the deed itself. Either the decree of the circuit court will have to be reversed and the bill dismissed, or the deed held fraudulent and void as to the plaintiff's demand, and the whole $1,300 yet due from the innocent purchasers, without notice, made liable to the demands of the creditors of said Isaac C. Beckley.

The conveyance was voluntary; there is no pretence that there was any consideration whatever paid by the wife; the defendant I. C. Beckley admits in his answer that he paid for the property himself. This is also a case of subsequent creditors seeking to set aside a conveyance as fraudulent under the statute. The statute of Virginia against fraudulent conveyances is found in 1 Rev. Code, 361, and is taken from the 13 and 27 Eliz. In different language, but to the same purport, it is incorporated into the Code of 1849, and is as follows : " Every gift, conveyance, assignment or transfer of, or charge upon any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained, and every bond and other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to, shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This shall not affect the title of a purchaser for

valuable consideration unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor." The language of this section, in its precise words, was incorporated into the Code of 1860, and also into the Code of West Virginia. It is in effect, the statutes of 13 and 27 Eliz., and all the decisions of the English courts upon the subject bear upon it as well as the decisions of our sister States which have adopted it. It has always been held by the courts of both countries that to avoid a conveyance under this statute, it must appear to have been executed with a fraudulent intent, and there has been much discussion as to what is sufficient to show such fraudulent intent. Even before the adoption of the Code of 1849, nothing was better settled than that a voluntary conveyance which interferes with or breaks in upon the rights of existing creditors, will not be permitted to take effect to the prejudice of their just demands, and this according to many of the cases, without regard to the amount of the debts, or the extent of the property settled, or the circumstances of the party. *Fitzer v. Fitzer*, 2 Atk., 511; *Taylor v. Jones*, 2 Atk., 600; *Chamley v. Lord Dunsany*, 2 Sch. & Lef., 690; *Reade v. Livingston*, 3 Johns. Ch., 481; *Thomson v. Daugherty*, 12 Serg. & R. (Pa.), 448; *Howe v. Ward*, 4 Greenl. R., 195; *Backhouse v. Jett*, 1 Brock. R., 500; *Ridgeway v. Underwood*, 4 Wash., C. C. R., 129; *Jackson v. Seward*, 5 Cow., 67; Judge Stanard's opinion in *Hutchison et al. v. Kelley*, 1 Rob., 123, and *Hunters v. Waite*, 3 Gratt., 26; *Sexton v. Wheaton*, 8 Wheat., 229.

In *Reade v. Livingston*, Chancellor Kent says: "The conclusion to be drawn from the cases is, that if the party be indebted at the time of the voluntary settlement it is presumed to be fraudulent in respect to such debts, and no circumstance will permit those debts to be affected by the settlement, or repel the legal presumption of fraud. The presumption of law in this case does not depend upon the amount of the debts, or the extent of the prop-

1877.
January Term.

Lockhard & Ireland
v.
Beckley *et al.*

erty in settlement, or the circumstances of the party. There is no ' such line of distinction set up or traced in any of the cases. The attempt would be embarrassing if not dangerous to the rights of the creditors, and prove an inlet to fraud. The law has, therefore, wisely disabled the debtor from making any voluntary settlement of his estate *to stand in the way of his existing debts.*"

On the other hand, numerous cases are to be found which in effect maintain the doctrine that a voluntary conveyance may be good under circumstances, even as against existing creditors; and that the indebtedness of the grantor at the time is but a badge or evidence of fraud, and the question still being in every case whether the conveyance is a *bona fide* transaction or a mere device to delude and defeat creditors. *Codogan v. Kennet,* Cowp., R., 432; *Doe v. Rutlige,* Ibid., 705; *Richardson v. Smallwood,* 1 Jacob R., 552; 4 Cond. Eng. Ch., 202; *Gale v. Williamson,* 8 Mee. & W., 405; *Verplank v. Sterry,* 12 Johns., 536; *Wickes v. Clarke,* 8 Paige R., 161; *Seward v. Jackson,* 8 Cow., 406; *Hinde's lessee v. Longworth,* 11 Wheat., 199; *Salmon v. Bennett,* 1 Conn., 525; *Hopkirk v. Randolph,* 2 Brock., 132; Judge Baldwin in *Hutchison et al. v. Kelley,* 1 Rob., 123; *Bank of Alexandria v. Patton et al.,* 1 Rob., 499; and *Hunters v. Waite,* 3 Gratt., 26.

The subject was one involving the inquiry into the relation which the two great classes of creditors, prior and subsequent, sustained to a voluntary settlement; whether they occupied a common ground so that a conveyance which would have been adjudged fraudulent as to a prior creditor would, also for the same reason, be so held as to a subsequent creditor, or would a discrimination be made, the effect of which would be to withdraw from inquiry in the case of a prior creditor, the various circumstances attending the execution of the conveyance, such as the nature of the consideration, the value of the property settled compared with that retained, if any, the extent of the indebtedness, &c., &c., all of which all the

cases show would be most proper to consider in the case of a subsequent creditor, and upon which, in order to succeed, he must be able to show the fraud in the absence of direct and positive proof of the intent.

The question as to the rule that should be applied to existing and subsequent creditors, has been the subject of a most animated and elaborate discussion between two, among the ablest, of the Judges of the court of appeals of Virginia, in the cases of *Hutchinson v. Kelly*, 1 Rob. R., 123, *Bank of Alexandria v. Patton*, Ibid., 499, and *Hunters v. Waite*, 3 Gratt., 26.

Judge Baldwin, with great learning, combats the opinion of Chancellor Kent in *Reed v. Lovingston*, and insists that the two classes of creditors stand on common ground, and says that, although indebted at the time of the voluntary conveyance, such indebtedness is *prima facie* evidence of fraud, and that in that case, while there would be a legal presumption against the validity of the conveyance, it would not be conclusive, depending upon the particular circumstances of the case. Judge Stanard takes the opposite ground, and in *Hunters v. Waite*, in a most able and elaborate opinion, the last that great Judge ever wrote, desiring to do right above everything else, he subjected his former opinions to the severest scrutiny. In referring to the case of *Hutchinson v. Kelly*, he said: " If on the review of the decision in question, it should be ascertained that it is opposed by the great preponderance of judicial precedents, and, still more, if it runs counter to some of the elementary principles of law, it is our right, it is our duty to retract it, retrace our steps, and conform our judgments to those precedents and restore the sway of the principles that may have been departed from." He certainly came to the same conclusion he had before reached, for he says, page 53: "A diligent search has been fruitless to find one single case in which the title under a voluntary settlement, unaided by the accession of some consideration deemed valuable in law, has been sustained as valid against a prior cred-

1877.
January Term.

Lockhard & Ireland
v.
Beckley *et al.*

itor." Thus the conflict stood when the Code of 1849 was adopted, some three years after the decision of *Hunters v. Waite,* when the Legislature of Virginia put at rest the controversy by adopting the views of Judge Stanard and Chancellor Kent. Section two of chapter one hundred and eighteen made its appearance for the first time, and no doubt was incorporated into the Code, in consequence of the discussion referred to, and the decision of the case of *Hutchinson v. Kelly.* It is as follows: " Every gift, conveyance, assignment, transfer or charge, which is not upon consideration deemed valuable in law, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely, be void as to creditors whose debts shall have been contracted, or as to purchasers who shall have purchased after it was made; and though it be decreed to be void as to a prior creditor, because voluntary, it shall not for that cause be decreed to be void as to subsequent creditors or purchasers."

This section, in the same words, is in the Code of 1860, and also in the Code of West Virginia, and is the law of this State. We have searched the Virginia Reports to find an opinion construing this section, but have found none which, in terms, did it; but there is one, *Pratt et al. v. Cox et al.,* 22 Gratt., 330, which will hereafter be referred to, which has an important bearing upon the subject. Since this section has become a part of the statute, we may, as to previous or existing creditors, say that it is now settled that a voluntary conveyance which interferes with or breaks in upon the rights of existing creditors will not be permitted to take effect to the prejudice of their just demands, but as to such creditors is absolutely void, without regard to the amount of the debts, the extent of the property so conveyed, the motives that prompted the settlement, or the condition and circumstances of the grantor at the time it was made.

The statute is positive in its terms, and it is no longer, if it ever was, necessary to impeach such a conveyance

as to an existing creditor, to shew anything except that the conveyance was a voluntary one, and that the party who seeks to impeach it, was at the time, a creditor of the grantor.

But now, as to such a conveyance, whatever may have been the doubt before the Code of 1849, a subsequent creditor sustains a very different relation ; he must now show such circumstances or proof, as stamps the conveyance as fraudulent in fact. A voluntary conveyance cannot be impeached by subsequent creditors on the mere ground of its being voluntary, and the grantor being indebted to some extent at the time, if there be no actual fraudulent view or intent in the grantor, or the party who had purchased the property and paid for it, and at whose request the grantor had conveyed it, at the time it was made.

But if it be shown that there was *mala fides* or fraud in the transaction, whether the actual fraudulent intent relates to existing creditors, or is directed exclusively against subsequent creditors, the effect is precisely the same, and subsequent creditors may, upon the strength of such fraud, successfully impeach such conveyance.

The language of the statute is that it " shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account *merely* be void as to creditors whose debts have been contracted, or as to purchasers who shall have purchased after it was made."

It is not sufficient to impeach a voluntary conveyance for fraud, as to subsequent creditors, to shew it was voluntary, and the party was indebted at the time. You must have stronger facts; these may be weighed, but they are insufficient if taken alone; if in addition to these two circumstances you can add others sufficient to show fraud in fact, you can successfully impeach the conveyance.

Numerous decisions may be cited to show that if the conveyance was in fact fraudulent as to existing cred-

itors, although no existing creditor attempts to impeach it; it may nevertheless be. done by the subsequent cred- itor, on the ground that it makes no difference against whom the fraud was directed if fraud was in the mind of the party at the time the conveyance was made, and the actual fraudulent intent was directed against any creditor, prior or subsequent, it is impeachable at the suit of a subsequent creditor.

*Walker v. Burrows*, 1 Atk., 93; *Stileman v. Ashdown*, 2 Atk., 477; *Russell v. Hammond*, 1 Atk., 13; *White v. Sansom*, 3 Atk., 410; *Kidway v. Conssmaker*, 12 Ves., 136; *Halloway v. Millard*, 1 Madd., 225; *Richardson v. Smallwood*, 1 Jacob, 552; 4 Cond. Eng. Ch. R., 262; *Sexton v. Wheaton*, 8 Wheat., 229; *Hindes' lessee v. Longworth*, 11 Wheat., 199; *Salmon v. Bennett*, 1 Conn., 525; *Reade v. Livingston*, 3 Johns. Ch., 481; *Hutchison v. Kelly*, 1 Rob., 123; *Bank of Alexandria v. Patton*, Ibid., 500; *Hunters v. Waite*, 3 Gratt., 26; *Johnston v. Zane's trustee*, 11 Gratt., 552; *Pratt v. Cox*, 22 Gratt., 330.

The law does not restrain a man's domain over his own property so long as he acts with fairness and good faith, but it treats as null and void all fraudulent conveyances to secure it from the pursuit of his creditors; it is fraudulent to defeat them by reservations of benefits to himself; it is equally fraudulent to defeat them by benefactions conferred upon others. It is not the consideration, but the intent with which a conveyance is made that makes it good or bad as to creditors. Baldwin, J., in *Hunters v. Waite*.

It must not be supposed that the second section of chapter seventy-four of the Code intended to make innocent as to subsequent creditors a voluntary conveyance by a party to some extent indebted at the time it was made; the intent may have been vicious as to existing creditors and also as to subsequent creditors, if as to either, it will be void as to subsequent creditors. If in addition to the mere fact that the conveyance was

voluntary, the party was insolvent at the time, this additional fact of insolvency would stamp the deed as fraudulent in fact. *Hunters v. Waite,* 3 Gratt., 33.

While this section of the statute has not, in terms received by the court of appeals of Virginia, an interpretation, yet it has in effect, as to the point now under consideration. Judge Bouldin, in *Pratt v. Cox,* 22 Gratt., 330, said : " The deed made from A. H. Cox to Philip Umbarger, of the 10th of May, 1842, recorded January 5, 1843, was not only made without consideration deemed valuable in law, but was fraudulent in fact, having been executed by said Cox with the avowed intent to delay, hinder and defraud his creditors, which intent was known at the time to said Philip Umbarger; and that said deed was and is, therefore, absolutely void as to all the creditors of said Cox, then existing and subsequent. That the deed of the 17th of March, 1852, from Philip Umbarger to Philip D. Cox and others, children of said A. H. Cox, having been made in furtherance of the fraudulent intent aforesaid, and without consideration deemed valuable in law, is in like manner void as to all the creditors of said A. H. Cox." The suit was not only brought in this case after the adoption of the second section of the statute as it now appears, but the last deed, held fraudulent in fact, was executed in 1852, and, because the fraud was directed against existing creditors, it was also held void as to subsequent creditors; and such is the law, that if the deed was fraudulent in fact as to existing creditors, it may for that reason be impeached as to a subsequent creditor.

There has been much discussion in many of the cases as to what proof is necessary to establish a fraudulent intent.

Judge Baldwin, in *Hunters v. Waite,* said, if a man in insolvent circumstances conveys away his property to strangers, or settles it upon his wife and children, the law concludes the design to be fraudulent against his creditors, and all evidence to the contrary is idle and de-

lusive ; and so if he renders himself insolvent by a vol-
untary conveyance, however meritorious in itself, mere-
ly, it is vain to speculate upon his motives or adduce ev-
idence of an honest purpose. It may be that he has
acted through ignorance or mistake or misconception.
Apologies and excuses may be found to absolve him
from moral turpitude, but to these the law cannot listen.
He is bound to know his own circumstances and the just
demands against him ; and the injustice and wrong to
his creditors are palpable and unquestionable."

In *Reade v. Livingston*, Chancellor Kent said, " With
regard to the claims of subsequent creditors there is more
difficulty in arriving at the conclusion; and I am not
called upon in this case to give any definite opinion, for
there are no such creditors before the Court, but since
the subject has been examined, I would suggest what
appears to me at present, but with my mind still open
for further discussion and consideration, to be the
better opinion from the cases: it is that the pre-
sumption of fraud as to those creditors, arising from the
circumstance that the party was indebted at the time, is
repelled by the fact of those debts being secured by mort-
gage or a promise in the settlement; that if no such cir-
cumstance exists they are entitled to impeach the settle-
ment by a bill properly adapted to their purpose, and
charging and proving indebtedness at the time, so that
their rights will not depend upon the mere pleasure of
the prior creditors whether they will or will not impeach
the settlement; the question then arises, to what extent
must the subsequent creditors show a prior indebted-
ness ? Must they follow the *dictum* of Lord *Alvanly*
and show insolvency, or will it be sufficient to show any
prior debt, however small, as is contended for by Mr.
*Atherly*, with his usual ability, in his Treatise on Mar-
riage Settlements? (Ath. Mar. Set., 212-219). I should
apprehend that the subsequent creditors would be re-
quired to go so far, and only so far in showing debts, as
would be sufficient to show reasonable evidence of fraud-

1877.
January Term.

Lockhard & Ire-
land
v.
Beckley *et al.*

ulent intent. To show any existing debt, however trifling and inevitable (to which every person is more or less subject), would surely not support a presumption of fraud in fact; no voluntary settlement, in any possible case, could stand upon that construction. I should rather conclude that the fraud in a voluntary settlement was an inference of law, and ought to be so as far as it concerned existing debts; but as to subsequent debts there is no such necessary legal presumption, and there must be proof of fraud in fact; and the indebtedness at the time, though not amounting to insolvency, must be such as to warrant that conclusion."

The authorities show that an intent actually to defraud creditors is to be legally inferred from the grantor being insolvent at the time, or greatly embarrassed, or so largely indebted that his conveyance necessarily has the effect to hinder and defraud creditors, and a voluntary conveyance made under such circumstances may be set aside by a subsequent creditor. In *Ridgeway v. Underwood,* 4 Wash., C. C. R., 137, Judge Washington said, a voluntary deed by a person indebted at the time to any amount, is fraudulent and void as to such *prior creditors,* merely on the ground that he was so indebted. But as to *subsequent creditors* the deed is not void for that reason, because it does not necessarily, nor even rationally follow that the conveyance was fraudulently made, with intent to hinder or delay creditors who became such long after the deed was made.

But if the case presents other circumstances from which fraud can legally be inferred, the voluntary conveyance will be avoided in favor of a subsequent creditor. Thus, if a grantor, in a voluntary deed, incurs debts immediately or so soon afterwards as to warrant the presumption that the deed was made in contemplation of such future indebtedness, it would be difficult to protect such a deed against the charge of fraud.

So, if the grantor, at the time the deed was made, was indebted to the extent of insolvency, or perhaps of great

1877.
January Term.

Lockhard & Ireland
v.
Beckley *et al* .

embarrassment, so as to create a reasonable presumption of a fraudulent design, the deed may be impeached by a subsequent creditor, unless the presumption is repelled by showing that such prior debts were secured by mortgage, or by a provision in their favor by the deed itself.

Although fraud in fact must be shown to impeach a conveyance as to subsequent creditors, it is not required that the express fraudulent intent appear by direct and positive proof; circumstantial evidence is not only sufficient, but in most cases is the only proof that can be adduced.

Fraud is to be legally inferred from the facts and circumstances of the case, when those facts and circumstances are of such a character as to lead a fair-minded man to the conclusion that the conveyance was made with intent to hinder, delay or defraud existing or future creditors, and to prevent them from subjecting the property to the payment of their debts.

*Russell v. Hammond,* 1 Atk., 13 ; *Taylor v. Jones,* 2 Atk., 600 ; *Reade v. Livingston,* 3 John., Ch., 481 ; *Hopkirk v. Randolph,* 2 Brock., 137 ; *Ridgeway v. Underwood,* 4 Wash. C. C. R., 137 ; *Chamberlayne et al. v. Temple,* 2 Rand., 384 ; *Hutchison v. Kelley,* 1 Rob. R., 123 ; *Hunters v. Waite,* 3 Gratt., 26 ; *Johnston v. Zane's trustee,* 11 Gratt., 552 ; *Rea v. Missouri,* 17 Wall., 532.

In the case of *Rea v. Missouri,* the grant turned upon proof of fraudulent intent. Judge Bradley, in delivering the opinion of the court, said: " To establish fraud it is not necessary to prove it by direct and positive evidence. Circumstantial evidence is not only sufficient, but in most cases it is the only proof that can be adduced.

" It was not necessary in this case for the defendants, in order to maintain the issue on their part, to prove by direct and positive evidence that Fuller had a secret trust or property in the goods. It was sufficient if they proved such facts and circumstances tending to that conclusion, as might reasonably induce the jury to believe

1877.
January Term.

Lockhard & Ire-
land
v.
Beckley *et al.*

that he had such trust or property. The sufficiency of such circumstantial evidence was not, in our judgment, properly presented to the jury ; but on the contrary the manifest tendency of the charge was to give them the impression that evidence of a more positive and direct character was required. The court (circuit court) said : 'The possession of the goods by Hayes, the same having been bought and shipped solely in his name, throws upon the defendant the burden of proving that Fuller had a property interest therein, or was a part owner thereof.' Whilst this may have been strictly true in a sense in which it might be understood by an educated lawyer, it did not express the whole truth in a form likely to be understood by the jury in such a complicated case as the one before them."

Again he says, on page 544 : " It may be urged that the qualifications made in the original charge given to the jury before they were sent out, rendered further qualification unnecessary in the final charge now under consideration. On the contrary, it is a more just inference to suppose that the final charge was regarded by the jury as explanatory and corrective of the first. And as the point on which they were likely to have had difficulty and difference of opinion would be the sufficiency of the circumstances proved to make out the case of the defendants, a charge like that which was finally given, coming after their fruitless discussion, ignoring altogether the force of circumstantial evidence, and reiterating that the only issue was property or no property in Fuller, must have had a strong tendency to lead them to an entire disregard of such evidence."

The same weight is to be given to evidence in a suit in chancery as in a suit at law, and the Judge takes the place of a jury, and is to draw precisely the same inferences from the evidence as a jury should. And if from all the evidence in the cause, either positive or circumstantial, the conviction is forced home upon the Chancellor that the conveyance was made to hinder, delay or

1877
January Term.

Lockhard & Ireland
v.
Beckley et al.

defraud creditors, he should not hesitate to set it aside. Sometimes cases are presented which move the sympathies of the court, but as the Master of the Rolls said in *Taylor v. Jones*, 2 Atk. 600: "Though I always have a great compassion for wife and children, yet on the other side, it is possible, if creditors should not have their debts, their wives and children may be reduced to want." Whoever suffers, the principles of justice must prevail. He who is not willing to do all for his wife and children does not deserve to be called a man, but he cannot favor even those so near to him with intent to deprive his creditors of what is their due. Men will leave their wives and children, become exiles from home, leaving their dearest ones within the enemy's lines, risk their lives in battle, all to protect and uphold the rights of man; then would they not rather that they and their families should even want than to inflict injustice upon their creditors? Better, far better, suffer even the privations of life, relying upon the humanity of mankind, than by devices and fraud keep from others what is due them.

In the case of *Johnston v. Zane's trustee*, 11 Gratt., we have the sad history of a young man, who inherited a large fortune from his father, who had married and was the father of children, and in about a year by his reckless extravagance had incurred debts and liabilities to between fifty and seventy thousand dollars. It seems he was in no business but that of a spendthrift. His friends prevailed upon him to execute two deeds of trust for the purpose of securing all the existing debts of himself and wife, and out of the residue of his property to have a support for himself and family. The deeds were promptly put upon record, the trustee took possession of the property, and a day or two after the deeds were recorded he executed his note to a man for more than twelve hundred dollars. There was no evidence that it was an existing debt at the time the deeds were made. A bill was filed for the purpose of impeaching the deeds for fraud

1877.
January Term.

Lockhard & Ireland
v.
Beckley et al.

and Judge Lee, in an able opinion, held, and, as we think, very properly, that the circumstances in that case were not sufficient to show that the deed was fraudulent as to creditors. In the case of *Sexton v. Wheaton*, 8 Wheat., 229, the allegations of the bill were in some respects similar to those in the bill in this case, and we think were sufficient if they had been proved. The circumstances upon which the plaintiff relied to support the allegations of his bill, were, "that the house and lot were purchased by the defendant Joseph, who, contemplating at the time carrying on the business of a merchant in the said city of Washington, procured the same to be conveyed to his wife; and obtained goods on the credit of his apparent ownership of valuable real property. That for the purpose of obtaining credit with the commercial house of the plaintiff, in New York, he represented himself in his letters as a man possessing real estate to the value of $20,000, comprehending the house in question, besides one hundred bank shares and other personal property. That Sally knew and permitted these representations to be made. That the defendant Joseph, in the presence of the defendant Sally, applied to General Dayton, the friend of the plaintiff, to be recommended to a commercial house in New York, and in the statement of his property as an inducement to make such recommendation he included the premises. That the defendant Sally permitted this misrepresentation, and did not undeceive General Dayton, although she had many opportunities of doing so."

All these allegations were denied by the answer. Chief Justice Marshall held the deed not fraudulent, but simply because the allegations of the bill were not proved. He says, page 238: "The allegation, that the house in question was purchased with a view to entering in mercantile speculations, and conveyed to the wife for the purpose of protecting it from debts which might be contracted in trade, and being positively denied, and neither proved by testimony nor circumstances, may be

1877.
January Term.

Lockhord & Ireland
v.
Beedley et al.

put out of the case." As to the other material allegation, that the wife participated in the fraud of her husband, the Chief Justice says: "A wife who is herself the instrument of deception, or who contributes to its success by countenancing it, may with justice be charged with the consequences of her conduct. But this is not such a case; and we consider the rights of Mrs. Wheaton unimpaired by anything she has done."

The court held that it was not shown in that case that the conveyance was made to hinder, delay or defraud creditors; but the principles enunciated in that case, if we had no other authority, would be sufficient for the decision in this.

It is alleged in the bill in this case, and not denied in the answers, or either of them, that Isaac C. Beckley always claimed the property as his own, to the exclusion of the pretended right of the said Mary R. Beckley, and has always and at all times done and said things that would tend to show that he was the absolute owner of said house and lot, and at no time has he done or said otherwise; that he had published an advertisement in a newspaper after the conveyance, in which he claimed the property; and the bill charges that both the trustee and Mary R. Beckley, well-knowing the representations made by the said Isaac C. Beckley, did not in any way contradict such representations.

This is not only not denied in the answers, which would be sufficient proof of the fact, but is satisfactorily proved by the witness Holt, and it is not denied by Isaac C. Beckley in his deposition. It is true that all the defendants deny in a general way all fraud and combination; but the conviction is forced upon my mind from the circumstances of this case that the combination is proved. Beckley was in debt at the time. There is no doubt about that; his varying answers and his deposition as to the fact of his indebtedness at the time of the conveyance and the amount thereof, makes it impossible to place any reliance upon his statements about the mat-

ter. Then again his admission that a decree had been pronounced against the one hundred acres of land; and the petitions filed shew an indebtedness to a number of parties, which, if not existing at the time, must have been contracted very shortly afterwards. Again, he repaired the property at considerable expense, occupied it as a hotel, carrying on business there, purchasing goods, and making false representations as to his circumstances; taking the goods to another county and selling them; the entire absence of any circumstance set up in the answer or proof to show in what his property consisted, and what he did with the money he got for the goods bought of plaintiff, the utter failure to show in defense either of himself or wife why it was he represented the property as his in the presence of his wife and her trustee, or to deny such charge, and why she and the trustee did not deny it, and how it happened, if he was worth what he claimed he was, he so soon became insolvent, are all against the *bona fides* of the transaction.

These circumstances, taken together, if there was nothing else in the record in support of the charge, would lead me to the inevitable conclusion that he procured that deed to be executed to hinder, delay and defraud his future as well as his existing creditors. But we have positive testimony in this case, which, if there could be any doubt about the intent with which the deed was executed, would put it at rest. The testimony of M. H. Holt is positive and direct. He says : " I was in the clerk's office of Raleigh county, and heard a conversation between General A. Beckley and John Rodgers, the then clerk of said court; I heard General A. Beckley say to the said John Rodgers that his son, Isaac C. Beckley, was in debt, and was expected to be sued, and that he (A. Beckley) intended to deed the tavern property to Isaac C. Beckley's wife, or to a trustee for her benefit, so that Isaac C. Beckley's creditors could not subject the property to the payment of their debts." Alfred Beckley says he does not recollect such conversa-

1877.
January Term.

Lockhard & Ire land
v.
Beckley et al.

tion, and don't think he had it. Holt also swears that "a short time before General A. Beckley made the conveyance of the said property to John P. Duncan, trustee for Mary R. Beckley, Isaac C. Beckley asked him whether he could not have the property conveyed to his wife, and whether or not it would prevent his creditors from subjecting it to the payment of his debts; that he had purchased the 'tavern property' from his father, General A. Beckley, and paid him for it, and that he wanted to reserve the 'tavern property' as a home for his family, and that he was in debt at the time." The deposition of Holt is excepted to for two reasons: First, that it narrates a conversation of General A. Beckley, which is claimed cannot affect the rights of Mrs. Beckley and her children ; and the further exception is made to that part of it which gives the conversation with Isaac C. Beckley, on the ground that it was a confidential communication with his attorney. As to the first exception, we think it is clearly shown that there was an understanding between father, son and daughter-in-law that the deed should be made to the wife of Isaac to keep his creditors from subjecting the property to their debts, and therefore the exception is not good. As to the other exception, it does not appear that the question put to Mr. Holt by Isaac C. Beckley was asked him as his attorney, and therefore that exception was properly overruled. The deposition of Holt, in connection with the other facts appearing, furnishes positive and direct evidence of the fraudulent intent in the parties to the conveyance to hinder, delay and defraud at least the existing creditors of said Isaac C. Beckley, and is as to his creditors, both prior and subsequent, fraudulent in fact, and void. And as a consequence the deed executed on the 27th day of October, 1871, by John Price Duncan, trustee for Mary R. Beckley, Isaac C. Beckley and Mary R. Beckley, to James T. McCreery and John W. McCreery, having been executed in furtherance of the fraudulent intent, as aforesaid,

is also fraudulent in fact, and as to the said creditors is void; but as the said James T. and J. W. McCreery are innocent purchasers for valuable consideration, without notice of the fraudulent intent of their immediate grantors, or of the fraud rendering void the title of the granters, their title to said property cannot be effected thereby, but as according to their answer filed in this cause, they owe $1,300 of the purchase money for said property, with interest on $550, part thereof, from the 10th day of November, 1872, and on $750, the residue thereof, from the 10th day of November, 1873, for which the vendor's lien is retained in their deed, the said money with its interest should, by said purchasers, be paid into the circuit court of Raleigh county, or to its receiver, and be by said court distributed to the creditors of said I. C. Beckley, according to their several priorities, in accordance with the principles of equity; and in default of the payment of said money into court, or to the receiver thereof, the said vendor's lien should be enforced for the benefit of the creditors of said I. C. Beckley.

For the foregoing reasons, the decree rendered in this cause by the circuit court of Raleigh county, on the 10th day of October, 1873, is reversed, with costs to the appellees, the parties substantially prevailing, against the appellants I. C. Beckley and Alfred Beckley, about their prosecution of this appeal expended, and the cause is remanded to the circuit court of Raleigh county, to be proceeded in according to the principles settled in this opinion, and the principles and practice governing courts of equity.

Judges Haymond and Green concurred in this opinion.

DECREE REVERSED and cause remanded.