# Charleston.

HUNTER'S EX'RS *v.* HUNTER, *et. al.*

Decided May 1, 1877.

1877.
January Term.

1. Matters not charged in the bill, or avered in the answer, and not in issue in the cause, are not proper to be considered upon the hearing.

2. It is not error, therefore, in a court to fail to pass upon the validity of a deed, when the record does not show that it was called upon to do so by the pleadings in the cause.

3. The limitation provided in section fourteen of chapter one hundred and four of the Code, commences to run at the time the deed was made, if it applies at all.

4. The limitations provided for in said section fourteen of chapter one hundred and four, does not apply to a case of actual fraud.

5. If the deed was in fact made with the intent, to hinder, delay or defraud creditors, either prior or subsequent, the said statute will not bar a suit by the creditors, to impeach the deed for the fraud.

6. Although fraud in fact, even as to an existing creditor after five years, must be shown to impeach the conveyance, it is not required that the actual or express fraudulent intent appear by direct and positive proof; circumstantial evidence is not only sufficient, but in most cases it is the only kind of evidence that can be adduced.

7. Fraud is to be legally inferred from the facts and circumstances of the case, where those facts and circumstances are such as to lead a reasonable man to the conclusion that the conveyance was made with intent to hinder, delay or defraud creditors, either prior or subsequent.

40

8. Where the evidence shows such facts and circumstances, as the conveyance being voluntary, the grantor being indebted to a material extent, to the degree of embarrassment, so that the conveyance would probably throw a hazard upon the creditor, and these circumstances are wholly unexplained, it is for the court or jury to say, from circumstances like these, whether the grantor, intended to hinder, delay or defraud his creditors; and if the circumstances are such, whatever they may be, to make a *prima facie* case of fraudulent intent in the grantor, they are to be taken as conclusive evidence of the fraudulent intent, unless rebutted by other facts and circumstances in the case.

9. On the 1st day of May, 1866, H, who is largely indebted, to a degree of embarrassment, caused a voluntary conveyance to be made to his wife, who did not take possession of the property, nor exercised any acts of ownership over it, as far as the record discloses, and the deed was not recorded for eight years after it was made, and not until after the death of H, and four years after the date of the said deed, H, caused another voluntary conveyance to be made to his wife, and in his will devises to her his property. HELD:

That the circumstances surrounding the execution of the conveyance, show that it was made with the intent to hinder, delay, and defraud the creditors of the said H, and is fraudulent in fact, both as to the existing, and subsequent creditors of the said H.

10. A widow is not entitled to be endowed of lands until the purchase money secured by him thereon is paid.

11. It is not error to render a decree to sell the lands of a deceased husband without ascertaining in the suit in what lands, conveyed in his life-time, the widow is entitled to dower, and assigning her dower therein, as she may properly bring a suit, or suits, herself for that purpose against the proper parties.

Appeal from, and *supersedeas* to, four decrees of the circuit court of the county of Greenbrier, rendered, respectively, on the 31st October, 1874; 30th June, 1875; 17th November, 1875; and 22d November, 1875, in a cause in chancery, pending in said court, wherein John A. Hunter's executors were plaintiffs, and Rebecca A. Hunter and others were defendants. The appeal was granted upon the petition of Rebecca A. Hunter.

The decree of 31st October, 1874, was rendered by J.

W. Davis, a member of the bar of the circuit court of Greenbrier county, who was appointed by the counsel in the cause to act as Judge, and preside upon the trial thereof at the October term, 1874, of said court.

Hon. Homer A. Holt, Judge of the eighth judicial circuit, rendered the other decrees.

The following statement of facts was prepared by JOHNSON, Judge, who delivered the opinion of the Court:

On the 29th day of May, 1874, David M. Erwin, John Lipps, John W. Dunn, Wm. H. Montgomery, W. B. Reid, Moses Coffman, and Arch. Rader, administrators of Samuel Coffman, deceased, David J. Ford and Reese Hebron filed their petition in this cause, and asked to be made plaintiffs therein, and for relief against a fund not drawn in question by the bill.

The petition proceeded as follows:

" That there is a suit in chancery now pending in this honorable court, instituted by A. C. Snyder and Samuel H. Austin, executors of John A. Hunter, deceased, against Rebecca A. Hunter, widow and devisee of said John A. Hunter, the children and some of the creditors of said Hunter, the object of which is to have the aid of the court in administering the assets of said estate, adjusting the priorities of the respective creditors, and paying off the debts as far as the assets will go, &c., &c.; all of which will appear by reference to the bill, exhibits and proceedings in said cause. The said cause has progressed so far as to have an account of the assets and debts of said estate directed to be taken by a commissioner of the court, for which purpose the creditors have been convened by publication by commissioner James Withrow, and many, if not all of the debts ascertained.

" Your petitioners further represent that they are, respectively, creditors of said estate. Their debts have been passed upon by said commissioner, and their re-

spective amounts ascertained.   They refer to said report for greater certainty.   They are advised and believe and so charge that the fund brought before the court in said cause for the payment of debts is wholly insufficient for that purpose; it is perhaps not more than sufficient to pay the preferred debts, if even sufficient for that purpose.   They are willing and desirous that said fund shall be applied as far as it will go to the payment of debts, but there is another fund which they allege is liable for that purpose, and which they desire to bring before the Court, and to bring into the case, for that purpose.   It is in part the brick house and small lot in the town of Lewisburg, adjoining the storehouse of J. E. Bell, conveyed to said Mrs. R. A. Hunter and her children by Uriah N. Warren and wife, on the 1st of May, 1866, a copy of which deed, recorded on the 11th day of April, 1874, is herewith exhibited as part of this petition.   Another part of said fund consists of the house and four or five acres of land in the town of Lewisburg, where the said John A. Hunter resided at the time of his death, and where his family still reside.   This house and lot were conveyed to the said R. A. Hunter for life, remainder to her children in fee, by Joel McPherson, commissioner of the circuit court of Greenbrier county, on the 11th day of April, 1870, and at the instance and direction of the said John A. Hunter.   The said R. A. Hunter was the wife of the said John A. Hunter, and the children referred to were his as well as her children. Your petitioners will file herewith a copy of each deed, and a copy of the decree under which the latter deed was made as part of this petition.   Your petitioners charge that said houses and lots are liable for the payment of all the debts of the said John A. Hunter. They were purchased and paid for by him, and were in every essential particular his property; the dwelling house and lot were decreed to him in the suit of Hunter v. Hunter, referred to in the deed, and he was and had been long in possession before he had the deed made to

his wife and children; the other house and lot were paid for by him, and had been long in his use and possession. His children were infants of very tender years, and had no estate or means with which to buy property, and so with Mrs. Hunter; she had no means with which to buy property; and they allege that these conveyances to them as aforesaid were merely voluntary and without consideration, and will not protect the funds against either the debts then existing, many of which were such, or which were afterwards created by the said John A. Hunter; that he must be just before he is generous. They charge that said deeds were fraudulently *procured* by the said Hunter to be made to his wife and children to delay, hinder and defraud his creditors, and that the law will so hold them to be, whatever the motive may have been, until the debts are all paid. The names of said Hunter's children are, Sallie R. J. Copeland, Bettie G. and Henry Hunter, and they are still all infants.

"In tender consideration of the premises, your petitioners pray that the said Rebecca A. Hunter, Sallie R. J. Copeland, Bettie G. and Henry Hunter, and all the creditors of the said John A. Hunter, deceased, who have proved or may appear and prove their debts, may be made defendants to this petition and be required to answer the same; that they may be permitted to appear as parties plaintiff in the cause aforesaid; that so much of the two houses and lots aforesaid as may be necessary for the payment of said debts may be sold for that purpose; and that your petitioners may have such other and general relief as comports with equity and good conscience, and as is applicable to their case. May this petition be taken as their bill in the case; may the State's *subpœna* issue, and as in duty bound they will ever pray, &c."

"To this petition, on the 29th of October, 1874, Mrs. Rebecca A. Hunter filed her answer, in which she says: "That the conveyance made to her and her children of the brick house and lot, in the town of Lewisburg, on

the 1st day of May, 1866, by U. N. Warren and wife, was not voluntary, or made with intent to hinder, delay, or defraud the creditors of John A. Hunter, nor otherwise, or in any wise fraudulent. Respondent had property which she derived from her father, the proceeds of which constituted one of the considerations of said conveyance; but even should it be thought that as a mere question of law that said conveyance was without valuable consideration, it can not now be attacked for that reason, as more than five years have elapsed since said conveyance was made, and she prays that this latter defense may be allowed her as fully as if the same was formally pleaded. Certainly there was no intent upon the part of any one that any of the creditors of said John A. Hunter should be hindered, delayed or defrauded by said conveyance, and there were no circumstances attending it from which such an inference ever could be drawn. As to the conveyance of April 11, 1870, of the house and lot where respondent now resides, which was the mansion house of said Hunter, respondent denies that that was made with intent upon the part of any one to defraud, hinder or delay any of the creditors of said Hunter, or made with any fraudulent purpose whatever. Respondent has renounced the provisions of the will of her late husband, the said John A. Hunter, made in her behalf, as will be seen by reference to paper A herewith filed as an exhibit, and is dowable of all the lands owned by said Hunter, consisting of a number of tracts. Besides those sold by his executors, to whose report of sale filed in this cause reference is here made for the quantity and designation of the same, which lands were sold without any reservation of respondent's dower. The said Hunter was the owner of the following tracts also, viz: A tract of five hundred acres, referred to in the report of commissioner Withrow, made in this cause, one-half of a tract of one hundred and sixty-eight acres, (improperly designated as one hundred and fifty, as will be seen by exhibit B, filed herewith), one-half of a tract

of one thousand, six hundred acres (on the books one thousand, six hundred and fifty-five acres,) another tract of forty acres, and another of thirty acres, and another of ten acres, bought under a decree of this court in the case of *Hunter's adm'r v. Hunter's heirs*, as will be seen by reference to said cause, the land books of the county, and the exhibits, C, D, E and F, filed herewith as a part of this answer. If from any cause it should be held that said conveyance of April 11, 1870, is voluntary, and for that reason only, fraudulent as to the creditors of said Hunter, respondent is willing that her dower interest in the lands aforesaid may stand as the consideration of said conveyance, but otherwise she will claim, and doth hereby claim her dower in all of said lands, and prays that the same may be assigned her in the ·house and lot conveyed by said deed of April 11, 1870, as it cannot be assigned in the lands sold by said Hunter's executors, and it would not be proper or fair to respondent to assign them in the other lands above mentioned, and having fully answered respondent begs to be hence dismissed with her costs."

No exhibits except A referred to in the answer, appear in the record.

The infant defendants answered by guardian *ad litem*.

The deed sought to be set aside as fraudulent, is as follows:

"This deed, made and entered this 1st day of May, 1866, between U. N. Warren and Mary A. Warren, his wife, of the one part, and R. A. Hunter and children, of the other part, all of the county of Greenbrier, witnesseth:

That in consideration of one dollar, lawful money of the State, to them in hand paid by the said R. A. Hunter, the receipt whereof is hereby acknowledged, the said Uriah N. Warren and Mary A., his wife, do grant unto the said R. A. Hunter and her children a certain town lot lying in the town of Lewisburg, on the main street thereof, and being a part of a lot No. 38, conveyed to

said U. N. Warren by Alexander W. Arbuckle and Julia, his wife, by deed, dated January 28th, 1858, and of record in the Clerk's office of Greenbrier county, being fifty-five feet long and twenty feet wide, and bounded on the west by lot owned by Mrs. Mary Smith, on the south side by lot attached to the livery stable, and on the east by the lot of Johnson E. Bell, to have and to hold the said lot and its appurtenances to the said R. A. Hunter, her heirs and assigns forever; and U. N. Warren doth covenant and agree to warrant generally the property thereby conveyed to the said R. A. Hunter and children.

Witness the following signatures and seals:

U. N. WARREN,      [Seal.]

MARY ANN WARREN,      [Seal.]

This deed, was properly acknowledged as to both parties, on the 1st day of June, 1866, but not recorded, or filed in the proper office for record until the 11th day of April, 1874. There is nothing in the record to show in whose possession it was, between the date of its acknowledgement and its recordation.

The deposition of U. N. Warren, the grantor, was taken in the cause, and as it is short, will be set out in full, as follows:

Question by plaintiffs' counsel—Look at the copy of a deed herewith exibited, marked, "U. N. W.," purporting to be a deed from U. N. Warren and wife to R. A. Hunter and her children, for a part of a lot on Main street, in Lewisburg, and say whether you are the same U. N. Warren who made said deed?

Answer—I am.

Second question by same—Who purchased the lot and paid you for it? Did John A. Hunter or his wife, R. A. Hunter?

Answer—John A. Hunter bought the lot and paid me for it.

Third question by same—At whose instance, and why was the deed made to Mrs. Hunter and her children?

Answer—Mr. Hunter brought the deed to me, and me and my wife signed it.

CROSS-EXAMINED.

First question by Mrs. Hunter—Please examine the deed herewith exhibited marked "Exhibit A," for defendant, and state whether that deed was executed by yourself and wife, and whether it includes, except as to five feet in the rear, the land mentioned in the deed above. referred to in your direct examination.

Answer—The deed marked "Exhibit A" was executed by myself and wife. It is for the same land as the deed mentioned in my direct testimony, except as to five feet in the rear.

Second by same—About what time, as nearly as you can recollect, was the property sold for which said deed was made?

Answer—I think it was in 1854 or 1855.

Question by the plaintiff's counsel—In whose handwriting are those deeds?

Answer—Dr. Hunter wrote the deeds.

By same—How did it happen that you made the two deeds for the same land?

Answer—I can't recollect how it happened, and I did not recollect that there were two deeds until I saw them this morning.

By same—Who made the improvements on the lot after you sold it in 1854 or 1855, and were they not all made before either of the deeds were made?

Answer—Dr. Hunter made the improvements on the lot. The improvements were made before either of the deeds were made.

RE-CROSS-EXAMINED.

First question by defendant—Were not these improvements made some time anterior to the war, and shortly after you sold?

Answer—They were.

1877.
January Term.

Hunter's Ex'rs
v.
Hunter et al.

Second by same—At what price did you sell this lot, and in what were you paid?

Answer—Three hundred and fifty dollars was the price paid for the lot. It was paid in a general settlement of accounts between Dr. Hunter and myself.

U. N. WARREN.

The second deed referred to in the deposition of U. N. Warren, but to which no reference is made in the peti-tition, answer, or decrees of the court, is also copied in the record, and is dated on the 11th day of April, 1870, acknowledged on the same day, and recorded April 12, 1870.

The deed of Joel McPherson, commissioner referred to in the petition, as also the will of John A. Hunter, are in the record. As the will may have some bearing on the questions to be decided, it will be set out as it appears in the record, as follows:

I, John A. Hunter, of the town of Lewisburg, and State of West Virginia, do make and publish this as and for my last will and testament.

I will and devise to my wife, R. A. Hunter, all my estate, real and personal, of which I may die seized and possessed.

My interest in certain lands purchased for taxes in 1871, the deeds to which have not been made as yet, some of which are in the name of A. C. Snyder, and one tract in my name, as assignee of John and James With-row, in all of which the said Snyder and myself are equally interested, I leave in the hands of the said Snyder to perfect the titles thereto, and to dispose of as he may think best for our mutual advantage, with author-ity to make all proper deeds and conveyances of same, and the net proceeds thereof to be equally divided be-tween said Snyder and my estate. I desire and direct that all my bonds, accounts and other evidences of debt be settled and collected by my executor as soon as prac-ticable, to meet any demands against my estate, for the

use of my wife. The sale of five hundred acres of land to Propst I wish closed by bonds, according to the title bond given by me; also same in regard to forty acres sold to John Syms. I have a written contract with Charles H. Church which I wish to have faithfully carried out, and during the existence and continuance of said contract, I request my wife to provide said Church with a suitable house, either here at my residence, or somewhere on my premises; I desire that he shall be well fixed so long as he remains with my family in pursuance of the terms of said written contract; and as a last favor, I ask my friends, James Withrow, Dr. Samuel H. Austin and A. C. Snyder to act as my executors of this my last will, and the said Withrow, Austin and Snyder are hereby appointed executors of this will, who are authorized and empowered to execute all deeds and conveyances necessary to the settlement of my estate, or to carry into effect all unexecuted contracts for the sale of lands made by me. And I *especially request* that every kindness shall be extended by my executors to my wife and children. I hereby revoke all wills or papers testamentary heretofore made by me.

In witness whereof, I have hereunto set my hand and seal this 17th day of April, 1873.

The will was admitted to probate at the June term of the county court of Greenbrier county, in the year 1873; at the same time the executors qualified.

Mrs. R. A. Hunter, on the 24th day of April, 1874, by a proper writing, renounced the will of her late husband.

The following is the abstract of the report of debts against John A. Hunter, as reported by the commissioner, and is a part of the record in this Court, and all that appears from the report, of which it is extracted:

Extracts from report of Commissioner James Withrow, filed in the case of John A. Hunter's executors against John A. Hunter's heirs on the 30th day of September, 1874.

1877.
January Term.

Hunter's Ex'rs
v.
Hunter et al.

Debts due from the testator, with interest to November 1, 1874 :

CLASS FIRST.

(Preferred unconditionally in their order of priority).

|  | Principal. | Interest. |
|---|---|---|
| Aggregate amount of class No. 1, principal and interest.........................................$3,529 12 | | $  894 13 |

CLASS SECOND.

(Debts due from John A. Hunter as fiduciary, to be paid in full next after those preceding).

| Aggregate amount of class second.............. | 1,938 34 | 1,457 84 |

CLASS THIRD.

(Debts preferred as to particular property, with interest to same time, being liens upon lands of John A. Hunter for purchase money).

| Aggregate amount of class third................. | 1,500 03 | ·303 18 |

CLASS FOURTH.

(Non-preferred judgments, bonds and notes, with interest to same time).

| Aggregate amount of class fourth............... | 6,638 46 | 1,917 14 |

(The debts of the petitioners are included in this class, to-wit):

| | Principal | Interest |
|---|---|---|
| D. J. Ford, bond, voucher 51......... ............ | 141 67 | 16 62 |
| D. M. Erwin, "      "      117...... ......... ...... | ˙ 50 00 | 46 50 |
| "  " same,    "      "      118..................... | 128 00 | 120 96 |
| "  " same,    "      "      119..................... | 110 00 | 100 65 |
| Samuel Coffman's adm'r bond voucher 50... | 225 00 | 180 22 |
| John Lipps, bond, voucher 58.................... | 147 15 | 17 75 |
| Same, account,      "      66.................... | 107 85 | 7 13 |
| John W. Dunn, *bond* "      59.................... | 140 85 | 108 50 |
| Wm. H. Montgomery, bond, voucher 61..... | 97 91 | 11 72 |
| R. Hodson, account, voucher 78................. | 221 63 | 21 03 |
| Wm. B. Reid "      "      120................. | 408 80 | 70 29 |

ASSETS.

| Whole amount of principal and interest, as found on page ten of report....................$5,231 97 | | $186 12 |

The following is the material part of the first decree rendered in the cause after the petition of D. M. Erwin

and others, were filed, and was rendered on the 31st of October, 1874.

"The cause came on to be further heard upon the papers formerly read the petition of D. M. Erwin and others, to which Rebecca A. Hunter this day filed her separate answer, and the said petitioners replied generally thereto, upon the report of commissioner Jas. Withrow, made pursuant to an order in this cause entered at the October term, 1873, the report of the sales of lands made by the executors, as set forth in the report of commissioner Withrow, and upon the argument of counsel. On consideration whereof, and it appearing from said report of commissioner Withrow, to which there are no exceptions, that there are four classes of debts due from the estate of John A. Hunter:

*First.* Debts unconditionally preferred, amounting on the 1st day of November, 1874, to $3,529.12 principal, and $894.03 interest.

*Second.* Debts due from said Hunter as a fiduciary, amounting on the said 1st day of November, 1874, to $1,938.94 of principal, and $1,457.84 interest.

*Third.* Debts due on the purchase of real estate, which are leins upon said real estate, amounting on the 1st day of November, 1874, to $1,500.03, and $303.18 interest, and

*Fourth.* All other debts which are not preferred as to any property of the estate amounting on the said 1st day of November, 1874, to $6,638.46 of principal, and $1,917.14 of interest.

And it further appearing that the entire available assets of said estate, both real and personal, with the exception of some lands of small value, about which there are suits pending, amounted on the 1st day of November, 1874, to the sum of $5,231.97 of principal, and $186.12 of interest, it is, therefore, adjudged, ordered and decreed that said report of commissioner Withrow be, and the same is hereby in all respects confirmed, except as to the debts charged to the executors as assets on page ten

of said report, as to which the rights and liabilities of the executors are not to be increased or diminished by said confirmation; that the report of sales of real estate made by said executors, and set forth in said report of commissioner Withrow, be and is also confirmed; and said executors are ordered to pay off the debts of said estate in the order in which they are reported in said report of commissioner Withrow, paying each class ratably, and the classes in the order of priority in which they are reported as aforesaid, as funds for such payment shall come to their hands; and that said executors pay out of the first moneys which shall be available from the assets in their hands the costs of their suit, including an attorney's fee of $75.00 for prosecuting this suit, to be paid to the plaintiff's attorney."

The second decree rendered regarding the rights of the petitioners was, on the 30th day of June, 1875, when the case was heard upon the papers formerly read, the petition of David M. Erwin and others, answer of Rebecca A. Hunter and replication thereto, answer of infant defendants, Sallie R. J. Copeland, Bettie G. and Henry Hunter, by their guardian *ad litem*, and replication to said answer, exhibits, depositions of witnesses and arguments of counsel. Upon consideration thereof, the court was of opinion that the fund pointed out and described in said petition, to-wit: the brick house and small lot in the town of Lewisburg, adjoining the storehouse of J. E. Bell (now Bell & Porterfield), conveyed to Mrs. R. A. Hunter and her children, by Uriah N. Warren and wife, on the 1st day of May, 1866, a copy of which deed is exhibited with said petition, and the house and four or five acres of land in the said town of Lewisburg, where the said John A. Hunter resided at the time of his death, and where his family still reside, conveyed to them by Joel McPherson, commissioner, by deed bearing date on the 11th day of April, 1870, a copy whereof is filed with said petition, are liable to be sold

to pay the debts of the decedent, John A. Hunter; and

the decree then proceeds as follows:

"That it was not in the power of said Hunter, with the heavy amount of indebtedness hanging over him, which, from the commissioner's report already confirmed in this case, appears to have existed at the time, to withdraw the fund aforesaid, and by a voluntary conveyance place the same in the hands of his wife and infant children to their exclusion. And the court is further of opinion that the statute of limitation is no bar to the relief sought by the creditors aforesaid. It is, therefore, adjudged, ordered and decreed, that the deeds aforesaid be set aside and annulled, but the court is further of opinion that the said Rebecca A. Hunter is entitled to dower in said houses and lots as the widow of said John A. Hunter, deceased, but for which the court would now decree a sale thereof, with direction that the proceeds be applied to the payment of the debts of said Hunter in their order as they appear; the court, however, is of opinion that dower should be first assigned to said R. A. Hunter. And it appearing to the court that the said R. A. Hunter consented to claim no dower in the other lands of which her husband died seized, which were sold by his executors upon condition that she was permitted to hold the lots aforesaid, and that she is now entitled to dower in those lands also, subject to such liens as by law are preferred to dower; and the said R. A. Hunter desiring her dower in all of the said lands and lots to be laid off in a body, which, in the opinion of the court, cannot prejudice the rights of creditors, it is, therefore, further adjudged, ordered and decreed that James Withrow, Harvey Handly, Mason Mathews and J. M. McWhorter, be and they are hereby appointed commissioners, any three of whom may act, to lay off the dower of R. A. Hunter in the lands and lots already sold, and the two houses and lots aforesaid in one body, embracing the mansion house, if practicable, having due regard to value, quantity and location, and assign the same to her

by metes and bounds, and make report of their proceedings to court. In making their estimates of the value of the dower in the lands sold, said commissioners, shall exclude from their calculation the amount of all liens for purchase money, and other liens, if any, having a preference over the dower, and may adopt the price at which the sold lands and lots were sold, and the sale confirmed at their value, and they shall further report, if required to do so by said R. A. Hunter, or if it should not be practicable to assign dower in the mansion house, the present gross value in possession of her dower interest in the real estate of her late husband, computing the same according to sections seventeen, eighteen and nineteen of chapter sixty-five of the Code; and said commissioners shall make any other alternative statement of the dower interest of said R. A. Hunter that either party may require, and report therewith any matter specially stated deemed pertinent by themselves or required by either party,"

Under the second decree, the commissioners appointed to assign dower to R. A. Hunter, the widow of John A. Hunter, reported the property in which she was entitled to have dower, and assigned her dower in kind of the dwelling house and one acre lot, valued at $2,000, and the lot in front of the same, valued at $500, and the whole property of J. A. Hunter, which he had sold, and in which his widow had not relinquished her dower, together with his unsold real estate, they ascertained to be worth, after deducting liens on the same for purchase money owed by said Hunter, $8,321.67. The commissioners made two statements at Mrs. Hunter's request, which are not material. To this report there was an exception, by the counsel for the petitioners, to the effect, that the report was erroneous, because, as he alleged, the commissioners did not adopt, as directed by the decree, the price of the (sold) lands which they brought at the time of the sale, as the foundation of their estimates. Thereupon, Mrs. Hunter made and filed the following affidavit:

"Rebecca A. Hunter, on her oath says, that she is the widow of the said John A. Hunter, deceased; that said Hunter in his life-time, conveyed to her certain property mentioned in her answer to the petition of R. D. Erwin and others, filed in this cause, that she believed that said conveyances were in every way *bona fide*, fair and legal, and that they assurred to her the property therein mentioned; that under this belief, when the executors of her deceased husband, proposed to sell the lands, which they did sell, and which have been reported to the court in this cause she made no objection thereto, and claimed no dower therein, for the reason that she supposed the conveyances aforesaid would stand, that the land aforesaid was sold for an inadequate price, and she believes that if she be now held to be dowable therein only to the extent of the price realized therefor, gross injustice would be done her, especially as the valuation of the town property is excessive, as compared with what the lands, sold, brought."

Mason Mathews, one of commissioners, also filed his affidavit as follows:

"Mason Mathews, on oath says, that he was one of the commissioners appointed in this cause, who laid off the dower of the widow of said John A. Hunter; that the value placed by said commissioners upon the lands of said Hunter, he believed and believes to be fair, but if the sums realized for the lands sold by the executors, is to be taken as representing the true value of their lands, then, in affiant's opinion, the estimate made by said commissioners of the town property ought to be reduced, and would have been reduced by this affiant, had he supposed that the said lands would have been put at the price they brought."

The third decree after the petition was filed was rendeeed in the cause on the 17th day of November, 1875; the cause was on that day heard upon the papers formerly read, the report of the commissioners to lay off and assign dower, the exceptions of the petitioners and affidavits, and it was decreed that the exceptions be sustained

1877.
January Term.

Hunter's Ex'rs
v.
Hunter *et al.*

and the report recommitted, with instructions to re-assign said dower upon the basis following, to-wit: By taking the amount realized for the lands sold, as representing the true value thereof, and affixing to the unsold lands such value as they may think just and fair, by reason of the limitation above fixed upon the valuation of the sold lands, and they were required to report their proceedings to the court, and then follows this concluding clause of the decree: "And it appearing to the court that said John A. Hunter in his life time sold certain of his lands in which his said widow is dowable, on motion of the plaintiffs they have leave to file an amended bill in this cause, making the parties interested in said lands parties defendant thereto, that the dower interest of said widow then may be ascertained and determined. And this cause is remanded to rules."

The commissioners filed their second report as follows:

"Pursuant to your order, the following report as to the dower of Mrs. R. A. Hunter in the lands of which her husband, J. A. Hunter, died seized, is respectfully submitted:

1st. Whole amount for which the lands and
    *lots sold*, see last report of your commis-
    sioners.............................................. $3245 00
Deduct liens............................................... 1618 33
                                    $1626 67
Dwelling-house and lot...................... $1500 00
(Lot in front of the house included in the
    above.)
Drug store............................................. 1250 00
                                    $2750 00
                                      $4376 67

The one-third part of the above sum is $1458.89. The house and lot, and lot in front of the same, are valued at $1500.00, and your commissioners are of opinion that Mrs. R. A. Hunter should have the said dwelling-house and lot, and the lot in front thereof; as and for her dower."

There was no exception to this report.

No amendment was made to the bill.

The last decree was rendered on 22d November, 1875, when the cause was heard on the former papers read, and on the amended report, and the claim made in the original report at the request of Mrs. Hunter, that the leins for purchase money should not be deducted from the value of the lands so as to decrease her claims for dower, but that the liens for purchase money should be paid out of the personal assets, and the court held that the widow had no right to dower until the purchase money was paid, and confirmed the report, and assigned the widow the dwelling house and lot, and lot in front of the dwelling house, and a commissioner was appointed to sell the drug store, and the property assigned as dower to the widow, subject to her dower therein.

*John W. Harris,* for the appellant:

It was not pretended that there was any fraud in this transaction, other than such as arose out of the voluntary nature of the conveyance, and the state of indebtedness disclosed by the record.

The fact that Hunter was indebted at the time of the conveyance raises no presumption of law that the conveyance was made for a fraudulent purpose. The contrary would, doubtless, have been the case anterior to the revisal of 1849, but not since. 1 Rev. Code, ch. 104, §2, and Code W. Va., ch. 74, §2 (the provision of 1849), are essentially different, according to the construction given the former. The doctrine which had obtained was that contended for by appellees; and actual and constructive fraud stood upon the same ground. There had been some difference of opinion. *Huston v. Cantril,* 11 Leigh, 136; *Hutchinson v. Kelly,* 1 Rob., 123; *Bank v. Patton,* 1 Rob., 499; *Hunters v. Waite,* 3 Gratt., 26; but *Wilson v. Buchanan,* 7 Gratt., 334, settled the rule, that as to subsisting debts the law would *infer* that the purpose was fraudulent where the deed was voluntary; and that if it was fraudulent as to these, it was

equally so as to all other debts. It was presumed that the grantor *intended* to defraud his creditors; but it was a presumption merely, which could be overcome by showing that the settlement was a reasonable one in view of the grantor's property, condition in life, &c.

But the act of 1849 altered this. It adopted the views of Chancellor Kent in *Read v. Livingston*, 3 Johns. Ch., 481, and Stanard, J., in the cases above cited. Nothing is now left to presumption, either as to subsisting or subsequent debts, and nothing remains to be rebutted. As to subsisting debts the deed is *absolutely void*. *Harvey v. Steptoe,* 17 Gratt., 289; as to subsequent debts, it becomes void only when shown to have been made with a fraudulent purpose—a mere question of fact, to be determined in the usual way. True, indebtedness may show that the deed was not *bona fide*; but it does not of itself show fraud, nor even shift the burden of proof; for, as a general rule, every man is indebted, and from this bare fact nothing is to be inferred. So far as the record shows to the contrary, Hunter was at that time worth millions. *It was not even alleged that he was insolvent or embarrassed.* If, therefore, there was no actual fraud, the deed cannot be avoided by §2 of ch. 74, Code, for the case is taken out of that statute by the lapse of five years between the making of the deed and the filing of the petition. Sec. 14, ch. 104, takes it out of the category of voluntary conveyances, with all its former inferences and presumptions, and its present rule of absolute avoidance, and places it upon the footing of a deed for valuable consideration, to be set aside only for actual fraud. See *Snoddy v. Haskins,* 12 Gratt., 363.

The case is unaffected by the filing of the petition (the bringing of the suit) within five years from the *recordation* of the deed. The expression employed in the statute is, "unless within five years after it is *made,* suit be brought." The statute should be construed liberally; it is one of repose; it is remedial in its nature; it

is intended to prevent the statute of absolute avoidance being turned into a means of oppression. Moreover, the appellees cannot complain of a failure to record, as recordation is for the purpose of giving notice, and they had notice, for *there is no allegation of a want of notice,* and notice should, therefore, be presumed, under the circumstances shown.

But the deed *was* recorded before suit brought; and hence is not avoided by §5 chapter 74. This statute could not affect it, if it had been founded on a valuable consideration, and, as before stated, it stands on the footing of such a deed. And this last statute don't apply for the further reasons that the appellees are simple contract creditors, 1 Law Dig., 486; 1 Bibb, 416; 3 Littel, 13; §9, chapter 74, it was added to settle an altogether different question. *McCandlish v. Kean,* 13 Gratt., 637. Nor does §2 of chapter 133, enlarge the application of the term " creditors " as employed in the recording acts. Its object was to change the rule of the equity courts that one must be a judgment creditor to assail, even, the fraudulent deed of his debtor. Rep. Rev. vol. 2, p. 879.

*Samuel Price,* for appellees, referred to the following authorities:

*Reade v. Livingston,* 3 Johns. Ch., 481; *Huston v. Cantral,* 11 Leigh, 136 ; *Hutchinson v. Kelly,* 1 Rob. Va., 123; *Bank v. Patton,* 1 Rob. Va.; *Hunters v. Waite,* 3 Gratt., 26 ; *Wilson v. Buchannon,* 7 Gratt., 334; *Harvey v. Steptoe,* 17 Gratt., 289 ; *Snoddy v. Haskins, et al.,* 12 Gratt., 363.

JOHNSON, JUDGE, delivered the opinion of the Court:

This is an appeal from the several decrees of the circuit court of Greenbrier county, rendered in this cause by Mrs. Rebecca A. Hunter, who assigned the following errors therein:

*First.* The failure of the court to pass upon the valid-

ity of the deed made by U. N. Warren to her and her children, in 1870:

*Second.* That the court set aside the deed made to her and her children, by U. N. Warren, in the year 1866.

*Third.* The refusal of the court to assign her dower in the whole of her husband's lands.

As to the first error assigned: There is no mention made, either in the petition of D. M. Erwin and others, the answer of any of the defendants, or any of the several decrees of the court of the said deed of 11th of April, 1870. The deed attacked as fraudulent by the petition, and the land it purports to convey are therein described in these words, "the brick house and small lot in the town of Lewisburg, adjoining the store of J. E. Bell, conveyed to said Mrs. R. A. Hunter and her children, on the 1st of May, 1866, a copy of which deed, recorded on the 11th day of April, 1874, is herewith exhibited as part of this petition." This is the deed, and the only deed referred to embracing that property, either in the petition or answer of Mrs. Hunter, both deeds are referred to by U. N. Warren in his deposition, and it is not deemed material which side exhibited the copies there; the material facts proved by Warren's depositions are, that John A. Hunter bought and paid for the property, and, that at his request the conveyance was made to Mrs. Hunter and her children. This Court will not undertake to decide as to the validity of the deed of 1870, as it was not proper for the circuit court to do so under the pleadings in this cause. It is well settled that matters not charged in the bill, or averred in the answer, are not proper to be considered upon the hearing of the cause. *James v. McKernon*, 6 Johns., 543; *Morehead et al. v. DeFord et al.*, 6 W. Va., 316.

Therefore, it was not error in the court to fail to pass upon the validity of that deed, when the record does not show that it was called upon to do so by the pleadings in the cause.

As to the second error assigned there is much more difficulty.

It has been very ably argued for Mrs. Hunter, that there was no fraud in fact, in the execution of the deed of 1866, and notwithstanding the fact that John A. Hunter was indebted at the time the conveyance was made, and by the express provision of sec. 2, of chap. 118 of the Code of 1860, the deed would have been void as to such existing creditors, yet, by the fourteenth section of chapter 104 of the Code, which provides that:

"No gift conveyance, transfer or charge, which is not on consideration deemed valuable in law, shall be avoided either in whole or in part, for that cause only, unless within five years after it was made, suit be brought for that purpose," &c., the suit to set aside said deed is barred. That unless fraud in fact be shown, the petitioner's right to impeach the deed is barred by the statute. And it is insisted by the counsel that the statute commences to run, from the date of the deed, or when the deed was in fact made. We think there is no doubt of the truth of this last position, as the language is express, that it cannot be avoided, &c., "unless within five years after it was *made*, suit be brought for the purpose." It is settled that, even in those states where the statute of limitation runs against actual fraud, that it will not commence to run until the fraud is discovered; but in that case the pleading that put the fact in issue would have to show *when* the fraud was discovered. In our own State we have no statute of limitation against fraud in fact. *Snoddy v. Haskins,* 12 Gratt., 363. So the question is, was the deed of the 1st of May, 1866, executed by John A. Hunter with the actual fraudulent intent to hinder, delay or defraud his creditors? If it was, then the petitioner's right to impeach it for such fraud is unaffected by the statute interposing the bar of five years. If it was not, the statute does bar their right to impeach the deed, as being void against them, as the creditors of the said John A. Hunter.

The great contest between Judges Baldwin and Stanard, and only ending with the death of the latter, and which is reported in *Hutchinson v. Kelly*, 1 Rob., 123; *Bank of Alexandria v. Patton*, *Ibid.*, 499, and *Hunters v. Waite*, 3 Gratt., 26, was, whether the two great classes of creditors stood upon the same ground as to a voluntary conveyance, or whether they occupied different positions; and whether the fact of indebtedness at the time rendered a voluntary conveyance void as to existing creditors, or whether the mere fact of such indebtedness raised a presumption of fraud which might be rebutted by circumstances; Judge Baldwin contending that the mere fact that a man was indebted to some extent when he made a voluntary settlement, was not sufficient to stamp the deed as fraudulent, but raised a presumption of fraud which might be rebutted by showing that the settlement was a reasonable one, &c., and he also contended that if the deed was declared to be fraudulent as to existing creditors, it was necessarily fraudulent as to subsequent creditors.    Judge Stanard, on the other hand, took the position of Chancellor Kent, in *Read v. Livingston*, 3 Johns. Ch., 481, that the two classes of creditors, prior and subsequent, occupied entirely different grounds.    That while the voluntary conveyance might be fraudulent as to a prior creditor, that it was not necessarily so as to a subsequent creditor, and that as to a prior creditor the mere fact of the party being indebted to any extent at the time he executed such voluntary conveyance, stamped it as void, and he could not be permitted to escape the consequences by showing what other circumstances surrounded the execution of the conveyance.    Thus matters stood when the Code of 1849 was adopted, some three years after the decision in *Hunters v. Waite*.    The only change then made in the statute was the addition of what is known as the second section (which is the second section of chapter 74 of the Code of West Virginia).    It is as follows:

" Every gift, conveyance, assignment, transfer, or charge which is not upon consideration deemed valuable in law shall be void, as to creditors whose debts shall have been contracted at the time it was made, but shall not on that account merely be void, as to creditors whose debts have been contracted, or as to purchasers who shall have purchased after it was made; and though it be decreed to be void as to a prior creditor because voluntary it shall not for that cause, be decreed to be void as to subsequent creditors and purchasers." While it is true the Legislature adopted Judge Stanard's position as to prior creditors, it does not disturb the law as to subsequent creditors, and the same rule exists as to them as did before the Code of 1849. Neither does it in case of actual fraud either as to existing or prior creditors disturb the law as it existed before that time. But section thirteen of chapter one hundred and forty-nine, of the Code of 1849, which was also incorporated into the Code of 1860, and also the Code of West Virginia, chapter one hundred and four section fourteen provides that, "No 'gift, conveyance, assignment, transfer or charge, which is not on consideration deemed valuable in law, shall be avoided either in whole or in part for that cause only, unless within five years after it is made suit be brought for that purpose or the subject thereof, or some part of it be distrained or levied upon by or at the suit of a creditor as to whom such gift, conveyance, assignment, transfer or charge, is declared to be void by the second section of the one hundred and eighteenth chapter." This is section thirteen of chapter one hundred and forty-nine, in the Code of 1860, and the latter part thereof refers to the second section of chapter one hundred and eighteen, and in the Code of West Virginia, is the fourteenth section of chapter one hundred and four, and the conclusion thereof refers to section two of the seventy-fourth chapter.

Then by the express language of this section, the suit to impeach the conveyance is only barred in five years,

if there was no other reason to declare it void than the fact that the conveyance was *voluntary*, if there existed other reasons and the conveyance was executed under such circumstances as to show that at the time it was made there existed in the grantor, or the party who had purchased the property and at whose instance the conveyance was made, an actual fraudulent intent to hinder, delay or defraud his creditors, whether that fraud was directed against existing or subsequent creditors, the conveyance is void as to either class.

See *Lockhard & Ireland v. Beckley et al.*, decided at the present term of the Court.

Judge Baldwin, in *Hutchinson v. Kelly*, 1 Rob. 123, says: "The true principle, I conceive to be this, that a fraudulent intent against one or more creditors is fraudulent against all; and the statute justifies no other distinction between prior and subsequent creditors than that which arises from the necessity of showing a fraudulent intent against some creditor." Since the statute interposing the limitation of five years, in certain cases, and since the second section of chapter 74 of the Code of West Virginia has been a part of the law against fraudulent conveyancing, when more than five years have elapsed since the deed was made; the same rule applies to such an existing creditor and a subsequent creditor; in both cases fraud in fact must be shown.

Although fraud in fact must be shown to impeach the conveyance, it is not required that the actual, or express fraudulent intent, appear by direct and positive proof; circumstantial evidence is not only sufficient, but in most cases it is the only evidence that can be adduced. *Lockhard & Ireland v. Beckly, et al., infra; Rea v. Missouri*, 17 Wall., 532.

Fraud is to be legally inferred from the facts and circumstances of the case, when those facts and circumstances are such as to lead a reasonable man to the conclusion, that the conveyance was made with intent to hinder, delay or defraud creditors. There is much said

in the cases about "constructive fraud," "actual fraud," and " fraud *per se.*" In the case of *Davis v. Turner*, the doctrine of fraud *per se,* is examined and repudiated. It is true that there was a controversy about the sale of personal property, but I apprehend the principles there laid down would be applicable, to a case of real property. In that case the possession of the property, was left in the vendor, and the question was, whether that fact made the sale fraudulent *per se.* Judge Baldwin in that case said : " Our statute to prevent fraud against creditors (1 Rev. Code, p. 372) taken substantially from the 13 Eliz., chapter 5, is directed, not against an inconsistent possession, but a fraudulent design; not against fair and honest contracts, but gifts, grants, conveyances, bonds, suits, judgments, &c., made and construed of malice, fraud, covin, collusion or guile, to the intent or purpose to delay, hinder or defraud creditors ; and contains an express proviso that it shall not extend to any estate or interest, &c., which shall be upon good consideration, and *bona fide* lawfully conveyed or assured to any person or persons, bodies politic or corporate. The common sense meaning of such language, is obvious and ought not to be preverted by an artificial interpretation." He holds that in such a case, the retention of the personal property is *prima facie* fraudulent, but that presumption of fraud thus raised, may be rebutted. In the same case, p. 471, Cabell, J., said: " Nor do I apprehend any danger to the rights of creditors from the relaxation or abandonment of the rule of fraud *per se.* Their rights will be abundantly secured by the universally admitted rule, that the mere fact of retention of possession by the vendor is regarded as *prima facie* evidence of fraud as against creditors of the vendor, and will vacate the transaction as to them, unless the vendor can prove it to be fair and *bona fide.* Can justice require us to go further." I think it can fairly be drawn from the cases, that, where the evidence shows such facts and circumstances, as the conveyance being voluntary, and the grantor being in-

debted to a material extent, to the degree of embarrass-
ment, so that the conveyance would probably throw a
hazard upon the creditor, and those circumstances are
wholly unexplained, it is for the court, or jury, to say
from circumstances like these, whether the grantor in-
tended to hinder, delay or defraud his creditors.   And
if the circumstances are such, whatever they may be, to
make a *prima facie* case of fraudulent intent in the gran-
tor, they are to be taken as conclusive evidence of the
fraudulent intent, unless rebutted by other facts and cir-
cumstances in the case.

We have arrived at the conclusion that subsequent
creditors, as well as existing creditors who have not
brought suit, or in some way acquired a lien on the
property within five years after the voluntary convey-
ance was made, stand on common ground, and must
show fraud in fact, and the same evidence that would
show it in the one case would in the other.

In the celebrated case of *Reade v. Livingstone*, 3 John.
Ch. 481, Chancellor Kent, on page 501, says:   "I
should apprehend that the subsequent creditor would be
required to go so far, and only so far in showing debts,
as would be sufficient to raise reasonable evidence of a
fraudulent intent.   To show any existing debt, however
trifling and inevitable (to which every person is more or
less subject) would not surely support a presumption of
fraud in fact.   No voluntary settlement in any possible
case could stand upon that construction; I should rather
conclude that the fraud in a voluntary settlement was an
inference of law, and ought to be so as far as it concerned
existing debts, but that as to subsequent debts, there is
no such necessary legal presumption, and there must be
proof of fraud in fact, and the indebtedness at the time,
though not amounting to insolvency, must be such as
to warrant that conclusion."

Of course the Chancellor does not mean that nothing
else but indebtedness is an evidence of fraudulent intent,
but, if the only evidence of fraud in fact is the indebt-

1877.
January Term.

Hunter's Ex'rs
v.
Hunter *et al.*

edness of the party at the time the deed is made, that such indebtedness, though not amounting to insolvency, must be such as would warrant the conclusion that the deed was actually made with intent to defraud creditors. In the case of *Kehr v. Smith*, 20 Wall., 31, the Supreme Court held, " that a voluntary settlement of $7,000 cannot be sustained against creditors where the person owes $9,306, and has, of all sorts of property, the same being not cash, not more than $16,132." Judge Davis on page 35, said "surely the voluntary provision for the wife in such a condition of things, is not sustainable against existing creditors; nor can it be supported on the theory that the estate was worth a few thousand dollars more. Suppose it was, there would still be that extent of embarrassment which would have a direct tendency to impair the rights of creditors. In such a case a presumption of constructive fraud is created, no matter what the motive that prompted the settlement." It is true the learned Judge uses the phrase "constructive fraud," but he says again, "the ancient rule that a voluntary postnuptial settlement can be avoided, if there was some indebtedness existing, has been relaxed, and the rule generally adopted in this country at the present time will uphold it, if it be reasonable, not disproportionate to the husband's means, taking into view his debts and situation, and clear of any intent, actual or constructive to defraud creditors. Testing this settlement by this rule, it must be taken to be in bad faith toward existing creditors, as clearly it was out of all proportion to the means of the husband considering his state and condition, and seriously impairs his ability to respond to the demands of his creditors."

If "in bad faith" it was then fraudulent in fact. Judge Baldwin in *Hunter v. Waite*, 3 Gratt., on page 48, speaking of the circumstances of that case says, "But suppose it were established by the evidence that the grantor at the time of the settlement had ample resources if properly, and judiciously managed and applied, to meet ultimately all the

demands against him then existing, still it must be borne in mind that an enquiry of this kind is not a mere matter of debit and credit. In the grantors' own apprehension of his affairs, they were greatly embarrassed. And what right had he with the pursuit of his creditors in view, to withdraw therefrom an important part of his estate and require them to look only to the residue, thereby increasing the risk of loss from his wastefulness and mismanagement and imposing upon them the necessity of a more active diligence than that which the law prescribes."

The case of *Lowry v. Fisher*, 2 Bush., 70, was a case decided under much such a statute as section two of chapter seventy-four. In that case no statute of limitations was pleaded. That was a case where the conveyance was voluntary, and the grantor indebted to a material extent. Judge Hardin said under the circumstances of that case, the statutory provision was fatal to the conveyance so far as pre-existing debts were concerned. The Judge further says, "That although James H. Lowry, may not at the time have been insolvent, or so much involved at the date of the deed, as to render the residue of his estate then necessarily insufficient to pay his debts, yet if he was involved 'to a material extent,' by which we are to understand an extent which might, in view of ordinary contingencies, endanger the rights of his creditors, then the deed was constructively fraudulent as to subsequent as well as pre-existing debts, for in such a case a fraudulent intent is implied; and the deed was void for express fraud, if from the extent of the grantor's indebtedness, compared with his means of paying, the unreasonableness of the conveyance, as an advancement to the appellant, considering the claims of other right, and other attending circumstances, the inference is justified that the grantor made the conveyance for the purpose of avoiding the payment of his liabilities."

Or to express the law more briefly, in the language of Judge Baldwin, in *Hunters v. Waite:*

" The intent with which an act is done may be a conclusion of law from certain facts, against which conclusion all other evidence is unavailing, or it may be a presumption of law from other facts, which is *prima facie* only, and liable to be repelled by sufficient evidence." If it is shown that a man is insolvent at the time he makes a voluntary conveyance, no evidence of honest purpose could be introduced that would convince any one that the intent was not to hinder, delay and defraud creditors; but if he was indebted to a considerable extent and harassed by his debts, the presumption would be his intent was fraudulent as to creditors, but that presumption might be by him rebutted by showing, that at the time the settlement was made, it was a reasonable one in proportion to his means, and his creditors were not likely to be injured thereby, &c. Now, what are the circumstances of this case. The decree of 1874 shows that on the 1st day of November, 1874, the indebtedness of John A. Hunter amounted to something over $18,000, and his assets to something over $5,000, leaving a loss to be sustained by his creditors of over $13,000. It is true we have no statement in the record to show what his indebtedness was on the 1st day of May, 1866, when the deed was made, nor the amount of his property on that day, but the abstract of the report of commissioner Withrow shows, from the amount of debts of different classes, and the interest charged on these debts, that his indebtedness then amounted to almost, if not quite, as much as his assets, on the 1st day of November, 1874. From the date of the will and the probate thereof, John A. Hunter must have died between the 17th day of April, 1873, and the month of June of the same year. The report of the commissioner shows what must have been the sad condition of his financial affairs at the time of his death; yet, in his will, he bequeaths to his wife, R. A. Hunter, all the real and personal estate of which he might die seized and possessed. The only intimation that he gives in his will that he owes one cent in the

world is this, that "I devise and direct that all my bonds, accounts, and other evidences of debt, be settled and collected by my executor as soon as possible, to meet any demand against my estate, for the use of my wife." Where are the bonds, accounts, and other evidences of debt with which to pay the great indebtedness against his estate? They must have been very inconsiderable, for the decree of 1874 ascertains "that the entire available assets of said estate, both real and personal, with the exception of some lands of small value, about which there are suits pending, amounted, on the 1st day of November, 1874, to $5,231.97 of principal, and $186.12 of interest." John A. Hunter does not show in this, that he regarded the claims of creditors as amounting to much.

In his indebtedness is found a large item of $1,938.34 principal, and $1,457.84 of interest thereon, which he owed as a fiduciary, showing that debt, one of the most sacred character, had been standing for more than twelve years. Over $600 of the debts due the petitioners were in existence at the date of the deed, and evidently from the report, several thousand dollars more, to what extent it is impossible, from the mere abstract of the report to say, was also due at the date of the deed in 1866. It is probable his indebtedness then exceeded the amount of his assets. The house and lot conveyed by the deed of 1866, is called a "drug store" in the report of the commissioners to assign dower. It does not appear to have ever been in the possession of Mrs. R. A. Hunter; the deed to the said house and lot, was never recorded until after John A. Hunter's death, and it does not appear from the record who took it to the office for recordation; neither does it appear from the evidence that Mrs. Hunter knew anything about the deed, unless it can be presumed from the mere fact that it is made to her and appears upon the record. Four years after the first deed was made, while he was still heavily indebted, he had another valuable property, conveyed to his wife, the house and lot

where she resided, at the institution of this suit. That deed was promptly recorded.

What answer is there to the charge that the said deeds were made to hinder, delay and defraud the creditors of John A. Hunter and all the circumstance that are thrown around the transaction, the deed being voluntary, the heavy indebtedness at the time, no care for his creditors when he made his will, the failure to record the deed for eight years after it was made, and then not until after John A. Hunter's death, no possession of the property conveyed and the exercise of no ownership over it? There is none but a general denial of fraud; no attempt, to show that the gift was a reasonable one; no attempt to show that he had ample property with which to pay his debts, outside of that conveyed; no attempt to show why the deed was not recorded; no attempt, in short, to explain a single circumstance in the case. While he was providing for his wife, why did he not provide for his creditors? Situated as he was, the best evidence that he could have paid his debts, would have been to set apart his property for that purpose, and not have the most valuable of it conveyed to his wife, and leave his creditors to suffer. From the circumstances of this case I have no doubt that the conveyance of May 1, 1866 was made by John A. Hunter, with the actual fraudulent intent to hinder, delay and defraud his creditors, and that said deed of May 1, 1866, is void as to his creditors, both prior and subsequent, and that the statute of limitations, of five years, is no bar to the suit of the petitioners.

We do not see any error in the decrees, for the third reason assigned, or for the reason insisted upon by counsel for Mrs. Hunter in the court below, that the liens for purchase money ought not to be deducted from the value of her husband's lands in assigning dower.

The report of the commissioners showed that in their estimate they took into consideration all the lands proceeded against in the suit in which the petition was filed; that the other lands in which she claimed the right to

44

dower, were lands sold by her husband in his life time, and some wild lands, his title to which was in dispute. There is nothing to prevent her from bringing her suits against the proper parties claiming any of these lands, to have her dower set out in them, and in any of those suits, it would only be necessary for her to make defendant the party who was the present owner; and in those cases where the title to them is in dispute, the parties who claim to own the land and the heirs of her late husband. *Blair v. Thompson,* 11 Gratt., 441.

The amount of the liens for the purchase money in the lands was properly deducted in assigning the dower. In *Blair v. Thompson,* it was held that where a vendor had given bond and security for the purchase money, the vendors lien was not retained; and the vendor's widow was entitled to dower in the land. The converse of this proposition is undoubtedly true, that where the vendor's lien is retained, the widow is not entitled to dower until that is extinguished; and it cannot be extinguished at the expense of creditors out of the personal assets of the vendee.

Why should Mrs. Hunter complain of the dower assigned her? She made no exception to the commissioner's report, and she received the dower that she asked in her answer. In her answer she says she will claim dower in all her husband's lands, and prays "that the same may be assigned her in the house and lot conveyed by said deed of April 11, 1870, as it can not be assigned in the lands sold by said Hunter's executors, and it would not be proper or fair to respondent to assign it in the other lands." That was the property conveyed by McPherson, and was the mansion house, &c. As her prayer was granted, she ought not to complain.

For these reasons I am of opinion that there is no error in the said several decrees rendered by the circuit court of Greenbrier county, and that said decrees should be affirmed with $30 damages, and costs.

DECREES AFFIRMED.