# Wheeling.

MARTIN & GILBERT *v.* REXROAD *et al.*

Decided November 1, 1879.

*1879*
*Special Term.* 1. An award of arbitrators may be relied upon as a bar to a suit, but only when it is properly pleaded or set up in the answer.

2. Fraud may be legally inferred from the facts and circumstances of the case, when the facts and circumstances are of such a character as to lead a reasonable man to the conclusion that the sale was made with the intent to hinder, delay or defraud existing or future creditors.

3. Where the facts and circumstances in any case are such as to make a *prima facie* case of fraudulent intent, they are to be taken as conclusive evidence of such intent, unless rebutted by other facts and circumstances in the case.

Appeal from a decree of the circuit court of the county of Ritchie rendered on the 25th day of April, 1878, in a cause in said court then pending, wherein C. C. Martin and John L. Gilbert were plaintiffs and Zachariah P. Rexroad and others were defendants, allowed upon the petition of said Rexroad.

Hon. James M. Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case :

The plaintiffs, as late partners under the firm name of Martin & Gilbert, filed their bill in the circuit court of Ritchie county at January rules, 1877. The bill alleges

that the defendant, Harris, on the 8th day of September, 1875, confessed a judgment in their favor for $100.00 with interests and costs ; also another judgment for $276.77, with interest and costs ; and yet another judgment for $677.77, with interest and costs; that they sued out executions on said judgments, and suggestions against one Thomas Foster, who they claimed was indebted to said Harris; that Foster answered, that " at the time of the service of the suggestion there was in his hands the sum of $730.00 due on account of the purchase by him of the said goods, to be paid in monthly installments, each installment to be one-half of his monthly profits, and there was then due from him $150.00;" that the court then made an order that said Foster should pay to the the receiver, W. H. Douglass, then appointed, the said $150.00, and the amounts thereafter to become due. The bill further alleges that the defendant, Harris, was the owner of a certain stock of goods in Pennsboro in said county ; that the said Harris claimed to have sold the said stock of goods in the month of ———, 1875, to one Zachariah P. Rexroad, who thereupon took charge of said stock of goods, and carried on the business of merchandizing in said store until the month of ———, 1876, when he, the said Rexroad, sold the same to said Thomas Foster.

The bill further alleges that said sale to Rexroad by Harris was fraudulent ; that it was not made in good faith ; that it was a fraudulent arrangement made by said Harris with Rexroad for the purpose of defrauding the creditors of said Harris, and especially the plaintiffs ; that by said arrangement the said goods were to pass to Rexroad, and the business was to be carried on in his name, and that Rexroad was to receive a certain percentage from the profits of said business as a consideration for his services in carrying out said fraud ; that said arrangement was not in reality a sale, but said Harris retained his interest in said goods, and still retains his interest in and right to the proceeds of said goods in the

1879
Special Term.

Martin& Gilbert
v.
Rexroad et al.

1879
Special Term.

Martin&Gilbert
v.
Rexroad et al.

hands of Foster; that the amount remaining due from Foster to Rexroad, on the said purchase, is the property of said Harris, and Rexroad's name is simply used to fraudulently conceal Harris's rights in the premises; that on the 12th day of April, 1876, Foster executed a deed of trust on said goods to Addison Rexroad, to secure Z. P. Rexroad the payment of the purchase-money; and that on the 6th of June, 1876, Foster, having paid a part of the purchase-money, executed a second deed of trust to Samuel Musgrave to secure the balance of the purchase-money, and to secure to Smith, Hannaway & Co. the sum of $62.42, and Morehead, Templeman & Bro. the sum of $99.00; that the said last mentioned claims had been fully paid; that the deed of trust to Musgrave, provided that the said trustee should take charge of the said stock of goods, and conduct the business, and the proceeds received by him the first thirty days should be used in keeping up the stock, and after that one-half of said proceeds was to be applied to the purchase of new stock and the other to the payment of the instalment of $600.00 due Rexroad, and when that was paid then to the payment of the claims aforesaid, and then to the payment of the residue of Rexroad's purchase-money; the bill further alleges, that the said trustee, without the consent of Foster, closed the store. The deeds of trust are exhibited with the bill.

The bill prays that the trustee, Musgrave, be enjoined from in any way controlling or disposing of the said stock of goods, or any part thereof, and from receiving or collecting the proceeds of any sale of said goods made by himself or other persons, and from paying over to Harris or Z. P. Rexroad any money from the sale of said goods; and that Rexroad and Harris be enjoined from interfering with said goods, or from receiving the proceeds of the sale thereof; and that a receiver be appointed to take charge of the goods, and conduct the business of selling the same and collecting all moneys from the sales thereof; that the sale from Harris to Rexroad be set aside and the

proceeds of the goods be applied to the payment of plaintiffs' demands; and for general relief.

The injunction was granted as prayed on the 11th day of December, 1876.

At January rules, 1878, Harris and Musgrave filed their joint and several answer to the bill, in which they specifically deny all the allegations and charges of fraud in the bill contained. In said answer Harris avers that he received a *bona fide* consideration for the sale of said goods as set out in the answer of Rexroad.

Z. P. Rexroad also answered the bill distinctly denying every allegation and charge of fraud therein. His answer avers that shortly after he purchased the goods of Harris, the plaintiffs brought several suits against Harris and caused attachments to issue, which were levied on the stock of goods so purchased by him of Harris, and the store was locked up by virtue of said attachments by the sheriff of Ritchie county; that before the term of the court, to which said attachments were returnable, the plaintiffs in this suit learned that respondent intended to proceed against them on the attachment bond for the wrongful detention of his goods; and they sought out respondent and made propositions of compromise, which were refused; " but the plaintiffs through C. C. Martin, one of the firm, proposed to surrender the goods to respondent and submit the question to arbitrators as to how much damages this respondent was entitled to for the unlawful seizure and retention of said goods, which proposition this respondent finally agreed to; and thereupon the plaintiffs by C. C. Martin, their agent and one of the firm, selected a certain number of gentlemen wholly disinterested in the matter to act as arbitrators, and your respondent a like number, said arbitrators consisting of Creed Collins, Samuel Musgrave, Thomas Baker, Floyd Haymond and J. B. Crumrine, who after hearing the statement of both parties, together with the evidence offered by each, returned an award allowing this respondent $250.00 as damages, whereupon the

plaintiffs paid to this respondent $100.00 in groceries, and executed the note of the firm for $150.00, due in two years from date, dated September 10, 1875." This is the only attempt in the answer to plead an award to bar the plaintiffs' suit.

The answer shows how the respondent paid Harris for the goods he purchased, as follows: That when he purchased the goods from said Harris, he was to pay him for said goods $1,250.00, and that he has paid to and for him and his creditors, the following amounts: To A. J. Johnson, $300.00; to Mrs. Mary Taylor, $542.65; to E. C. Richards, $85.00; to Prager & Epstein, $217.00; to Samuel Musgrave, $58.15; to Geo. W. Morgan, $34.25; to G. W. Harris' store account, $17.03; to Jacob Allender, $8.30; to Mrs Mary Taylor, $5.60; to E. C. Richards, due bill, $2.00; to David Mearcer, $2.07; to Thomas Prather, $225.00; to Geo. W. Thomas & Bro., $151.10; making in all the sum total of $1,290.22, $40.22 more than he agreed to pay. All charges of confederacy are denied in this as in the other answers.

Moorehead, Templeman & Bro. filed their answer and deny that their claims secured in the trust-deed have been paid.

Smith, Hannaway & Co. filed a similar answer.

At February rules, 1877, the plaintiffs filed a supplemental bill, in which they set out the matters contained in the original bill, and in addition thereto, in reference to the attempted reliance upon the award of the arbitrators as a bar to the suit, as set out in defendant Rexroad's answer, say that when the attachments were sued out and levied on the stock of goods, they believed the sale of said stock to Rexroad was fraudulent, and that the goods were in fact the property of Harris; but that Rexroad claimed that the sale was made in good faith, and they, not at that time having any evidence to the contrary, agreed to release the goods from the lien of the attachments, and submit the question of damages to arbitration; that the representations of Rexroad as to his good faith in the

purchase of the goods was false and fraudulent and rely-

ing upon it as true, they submitted to the arbitration. They charge that "said Rexroad, in procuring the plain- tiffs to submit to said arbitration by his said false and fraudulent representations, practiced a gross fraud upon them; and said arbitration and all acts done in compliance therewith are based on a false and fraudulent considera- tion, and should be declared null and void." Another charge in said supplemental bill is that since the filing of the original bill the defendant G. W. Harris, had before Justice Samuel Musgrave instituted an action of unlawful detainer against said Thomas Foster to recover possession of the dwelling-house in which the storeroom is situated in which is the said stock of goods, and the possession by Harris of said dwelling would enable said Harris, Rex- road and Musgrave means of communication with the storeroom, and enable them to carry goods therefrom without observation, and that for this object the said suit is prosecuted. Some further matters alleged to have oc- curred since the filing of the original bill, are set up, which matters are not deemed material to the statement of the case. This bill prayed for the same injunction as was obtained upon the original bill, and in addition there- to that Harris might be enjoined from prosecuting the said suit of unlawful detainer, and contained the same prayer as the original bill.

An injunction was granted on the 17th of January, 1877, as prayed in the last named bill.

At February rules, 1877, the defendants filed a gen- eral demurrer to the said supplemental bill. On the 1st day of March, 1877, the said demurrer was overruled ; and the defendants, Harris, Musgrave and Rexroad, an- swered the said bill. On the same day the court directed an issue, to try the fact as to whether said sale was fraud- ulent ; which issue the court subsequently set aside. The answers deny all the allegations and charges of said supplemental bill. There is very much and conflicting testimony in the record on the question of fraud, and

the reputations for truth of two of the witnesses, which evidence will be sufficiently commented upon in the opinion.

On the 25th day of April, 1878, the court rendered a decree in the cause, in which it was found as a fact that the sale of the goods, made by Harris to Rexroad, was made for the purpose of hindering, delaying and defrauding the creditors of the said Harris; and that the amounts secured to be paid by Foster to Rexroad are the property of Harris; and that all these moneys were liable to the payment of the debts of said Harris; and the court having by a previous order appointed a receiver in the suit, who had sold the stock of goods and made his report, the decree ordered a distribution of the proceeds of the sale, and perpetuated the injunctions on both bills, except the one enjoining the prosecution of of the action of unlawful detainer, and referred the cause to a commissioner to ascertain and report the amounts received by the trustee Musgrave, &c.

From this decree the said Z. P. Rexroad appealed.

*R. S. Blair,* for appellant.

*W. L. Cole* and *C. D. Merrick,* for appellees, cited the following authorities:

Story Eq. Pl. §§333, 336; 2 Rob. (old) Prac. 295; 10 W. Va. 296; 1 Paige 200; *Id.* 168; 11 W. Va. 562; *Id.* 584; *Id.* 639; 4 W. Va. 610; Ad. Eq. 376, 377; 39 Ill. 584; 10 W. Va. 107; 9 W. Va. 105.

JOHNSON, JUDGE, delivered the opinion of the Court:

The demurrer to the supplemental bill was properly overruled. The charges of fraud, collusion and confederacy against the defendants, Harris, Rexroad and Musgrave, were distinctly made therein. An award of arbitrators may be relied upon as a bar to a suit, but before the defendant can rely upon such a defense, it must be properly pleaded. The defense of the award of arbitrators, attempted to be pleaded in the answer of Rexroad,

could not avail him as a defense, because too imperfectly pleaded, if it in fact existed. Among its other defects are the following: That it does not distinctly appear what the submission was, and that it does not appear that the attachment had in fact been abandoned.

The main question in this cause is one arising upon the facts. If the sale was made by Harris to Rexroad for the purpose of hindering, delaying or defrauding the creditors of Harris, and Rexroad participated in the fraud, then the sale did not pass the goods to Rexroad, and the stock of goods or their proceeds are liable to the debts of Harris; but on the other hand if the sale was made for a valuable consideration and in good faith, the goods are the property of Rexroad and not liable to the debts of Harris. It is not pretended that the plaintiffs had any lien upon the goods at the time of the alleged sale to Rexroad, neither is it claimed that the said goods are liable to the debts of Harris, unless the said sale was fraudulent. It is claimed by counsel of appellees that the clear preponderance of the evidence shows that the said sale was fraudulent. One circumstance relied upon is that the contract made and signed by the parties on the 11th day of June, 1875, and witnessed by L. D. Starkey, binds Rexroad to pay to Harris $1,250.00 for said goods, part of it in three months and the residue in six and twelve months, for which Rexroad executed his notes to Harris; while the claim of defendants is that Rexroad paid the consideration by paying the amount thereof to the creditors of Harris. If there was no evidence that the creditors of Harris were paid by Rexroad, with the consent of Harris, this would be a very strong circumstance to show fraud; but if it does satisfactorily appear that the creditors of Harris were paid this amount, then the strength of this circumstance is taken away. We here affirm the principles settled by this Court in the cases of *Lockhard & Ireland* v. *Beckley et al.*, 10 W. Va. 87, and *Hunter's ex'r* v. *Hunter et al.*, *Id.* 321, that fraud may be legally inferred

from the facts and circumstances of the case, when those facts and circumstances are of such a character as to lead a reasonable man to the conclusion that the sale was made with the intent to hinder, delay or defraud existing or future creditors; and where the facts and circumstances in any case are such as to make a *prima facie* case of fraudulent intent, they are to be taken as conclusive evidence of such intent, unless rebutted by other facts and circumstances in the case.

It is true the evidence shows, that at the time the sale was made the defendant, Harris, was largely indebted, perhaps to the degree of insolvency; and if the proof further showed that no consideration was paid for the goods, the sale as to such debts would be absolutely void; and such facts proved would also make it fraudulent in fact, and it would be void as to future creditors.

The plaintiff, Foster, swears that when he went to purchase the goods, he found Harris in the store, and hearing that Rexroad had a claim on the store went to him; and Rexroad told him "that whatever arrangements he made with Harris would be all right with him." Foster further said that A. J. Hickman came to the store and wanted goods on a debt Harris owed him, that witness would not let him have them unless Harris would consent to account for the price to him on the purchase money, to which Harris assented and he let him have the goods.

Troy said he had heard Harris say to Rexroad "what shall we do about it, Foster said he had a little money and more coming to him," and that was on the day they took the inventory of the goods, also that in the summer after the sale to Foster, Harris asked witness for money he owed him, and said he expected to get $500.00 or $600.00 from the store "but you know how it is."

L. D. Starkey, who was a witness to the contract, said that a short time before the sale to Rexroad, Harris had "tried to make a sham sale to him;" and the offer was refused. He further says that at the time the agreement of sale was made between Harris and Rexroad, he understood it was a "sham sale."

A. C. Ash says, he received goods out of the store on Harris's indebtedness to him.

John W. Gatrell says, that after the goods were attached Rexroad said "he was afraid Harris had gone back on him." If it had been a "sham sale," it would not have hurt him much, if he had.

Wilson says, after the sale Harris told him that "if he had good luck he would have as good a stock of goods in a year as when he was locked up."

Charles A. Walker says, he heard Rexroad say on the day of the sale, "that Harris had put the goods in his hands, and he would do the best he could with them for Harris." This witness says he was present when the sale was concluded ; which sale he says was made in the morning. This same witness also says, he had seen Harris's wife come into the store after the alleged sale, take down a bolt of alpacca, take it into her room and cut off two dress patterns therefrom.

The foregoing is the strongest testimony produced by the plaintiffs; and if this were all the evidence in the case, under the rule laid down in *Hunter's ex'r* v. *Hunter et al.*, I should be constrained to hold that it would be conclusive evidence of the fraud charged in the bill. Is this evidence rebutted by other facts and circumstances in the case? The witness Foster is successfully impeached ; and his testimony may be regarded as out of the case. The impeaching witnesses against Starkey crippled him very much, although a number of his neighbors and acquaintances testified that his reputation for truth was good, and they would believe him on oath. He is also shown to have made a statement, not on oath, that the sale was a *bona fide* one, and he would be compelled to so testify ; but it seems he afterwards changed his mind. According to his deposition he is placed in a very unenviable position ; that of a subscribing witness to a fraudulent contract; which according to his own testimony he understood to be so, when he subscribed his name thereto as a witness. Walker is expressly contradicted as to a material matter,

he says he was present when the sale was concluded; yet Kuykendall met him on the morning of the sale, after it was made, and asked him: "If we had not a new merchant in our end of the town "? and he replied: "He did not know, he had not been there this morning." But the strongest rebutting testimony, in the case is the fact, sworn to by the defendant, Rexroad, that he paid, and secured to be paid, to the creditors of Harris $1,290.22, which was $40.22 in excess of what he was to pay for the goods, and names the creditors whom he had thus paid and secured to be paid. It must be presumed that these were the creditors of Harris, as no attempt is made by the plaintiffs to contradict this evidence by one of the creditors thus named. Rexroad thus put it into the power of the plaintiffs to bring conclusive evidence of his fraud, if it existed; and as they made no attempt to thus contradict him, I must conclude his statement is true. He gave the plaintiffs notice of this defense by naming *all these creditors* in his answer, and yet they do not call a single one of them to show the statement untrue in a single particular. Besides he is corroborated in this statement by his father, Addison Rexroad, who says, he knows his son paid the money, and to enable him to comply with the contract "reached pretty deep into his pocket." He is also corroborated in this statement by the defendant Harris. It is nowhere intimated in the record, that $1,250.00 was not a fair price for the goods. This was paid, or secured to be paid by Rexroad, as I think the evidence clearly shows.

The preponderance of the testimony, to my mind, is clearly in favor of the good faith of the sale; and the court therefore did right in setting aside the issue, as it was no proper case for an issue. But the court erred in setting aside the sale, for the reasons aforesaid, the sale being a *bona fide* one; and it follows, that said Rexroad was entitled to sell the said goods to Foster, and is entitled to all the benefits of the deeds of trust executed for his benefit, and to all the proceeds of the sale of the

goods, or any part thereof, after he had purchased the same as aforesaid.

For the foregoing reasons, the decree of the circuit court of Ritchie county, rendered in this cause on the 25th day of April, 1878, is reversed, with costs to appellant; and this Court proceeding to render such decree as the circuit court should have rendered, the injunctions granted on the original and supplemental bills are respectively wholly dissolved; and this cause is remanded to the circuit court of Ritchie county, with instructions to enter such orders as may be proper with respect to the fund, which may be now, or has been, before it in this cause, and proceed according to the principles of this opinion, and in accordance with the rules governing courts of equity, and then ultimately to dismiss both the original and supplemental bills at the costs of the plaintiffs.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.    CAUSE REMANDED.