# CHARLESTON.

### BOWYER *v.* MARTIN *et al.*

Submitted January 15, 1886.—Decided February 6, 1886.

(*SNYDER, JUDGE, Absent.)

Although a deed be made for a valuable consideration, yet if the intent of the grantor in making it was to hinder, delay or defraud his creditors, the deed is fraudulent in fact as to the grantor, and also as to the grantee, if he had notice of such fraudulent intent.

*W. R. Rucker* for appellant.

*R. F. Dennis* and *J. W. Davis* for appellee.

JOHNSON, PRESIDENT:

The plaintiff filed his bill in April, 1876, in the circuit court of Greenbrier county against O. C. Martin, Sarah E. Martin his wife, Gamaliel Knapp and Charles A. Lowry, in which he alleges, that on March 17, 1873, he loaned to said Martin and Knapp the sum of $1,650.00 and took their bond therefor payable twelve months after date; that suit was pending on the law-side of the court to recover judgment on said bond; that at the time of the execution of said bond said Martin was the owner of two valuable tracts of land in Greenbrier county, one of 586 acres and the other of seventy

*Cousel below.

two acres that said tracts adjoined each other, and that said
lands constituted nearly the whole of the estate of said Mar-
tin; that Martin resided on said land; that on February 20,
1875 said Martin and Sarah E. his wife conveyed said two
tracts of land to the defendant Lowry, a brother of said Sarah
E. Martin; that the consideration expressed in said deed is
"$1.00 in hand paid;" that in said conveyance it is provided:
"but it is distinctly understood that Sarah E. Martin, wife of
O. C. Martin, is to retain a lien upon the above land and
improvements for the sum of $1,500.00, the one third of the
price of said land, as her dower interest." The bill charges
that said Sarah had not as yet any dower in said land; that
said deed was made to hinder, delay and defraud the creditors
of said Martin and especially to defraud the plaintiff; that
Lowry paid nothing for said land and the deed was a mere
sham and was made to keep the property of Martin from the
just demands of his creditors; that the reservation to Sarah
E. Martin was voluntary and fraudulent; that Martin has
been in the exclusive possesion of the land from the time of
the making of said fraudulent deed; that he has rented the
land and appropriated the rents to his own use; and that
said Lowry exercises no control over said land; that Knapp,
at the time the money was borrowed, and at the time said
deed was executed, was wholly insolvent. The bill prays that
the said deed may be declared fraudulent as to the plaintiff's
claim, and the said lands be subjected to the payment thereof.

The plaintiff in 1883 filed an amended bill, in which he
alleges the death of Sarah E. Martin and makes her children
and heirs at law defendants, and charges that in 1882 at the
November term of the circuit court of Greenbrier county in
the suit at law he recovered a judgment against O. C. Martin
and Gamaliel Knapp on said bond for $2,503.88 and costs of
suit $179.31, and exhibits a copy of said judgment. He also
claims as a charge on said lands costs recovered by him in
the Supreme Court of Appeals in said law-suit against said
Martin and Knapp amounting to $129.40, and exhibits an
execution therefor. The amended bill further charges, that
these sums are due and wholly unpaid. It also repeats the
allegations and charges in the original bill and prays, that the
said deed may be declared fraudulent as to his judgment and

debt, and that the lands of the defendant Martin be subjected to the payment of the same.

Martin answered the original bill denying fraud and averred that he sold the lands to Charles A. Lowry his brother-in-law, that the consideration was $2,500.00 in cash-paper, and a note from Lowry for $500.00 payable on the first day of March after the execution of the deed, and the $1,500.00 reserved to be paid to the wife of said Martin; that the $3,000.00 has all been paid to him; that the $1,500.00 remains unpaid; that this $1,500.00 was intended to be secured to his wife " for and in lieu of a certain sum of money willed to her by her brother, John H. Lowry," and to induce her to sign the deed; that her said brother, who died in 1874, left about $12,000.00 or $13,000.00 worth of property to be divided among his eight brothers and sisters, respondent's wife being one of the legatees; that said legacy had been partly received and used by defendant, and the residue assigned to him by his wife."

Lowry demurred to the original bill, and also answered the same. In his answer he denies any knowledge of the Knapp and Martin debt to the plaintiff " except from hearsay; " he knows nothing of the suit to recover said debt; admits the conveyance to him of the land and says : " The consideration agreed upon between this defendant and the defendants O. C. Martin and Sarah E., his wife, for said tracts of land was $4,500.00, to be paid as follows, to-wit : $2,500.00 in cash-paper or in hand, and $500.00 on or before March 1, 1875, in cash or cash-paper; and $1,500.00 to be paid to the said Sarah E. Martin. The said sum of $2,500.00 was paid at the signing, sealing and delivering of the said deed in paper held by this defendant against the said O. C. Martin and others and the said sum of $500.00 was paid in cash on April 15, 1875, and October 15, 1875, as is evidenced by the receipt and bond herewith filed marked respectively Nos. 2 and 3. The said sum of $1,500.00, secured to the said S. E. Martin, wife of the said O. C. Martin by the terms of the said deed, has never been paid, and is still owing and due, and this defendant does not intend paying the said $1,500.00 until the decision of this suit, and not then, unless certain private agreements between him and the said O. C. Martin are com-

plied with by the latter. The answer further avers, that Sarah E. Martin was a legatee of her brother John H. Lowry, and that all that she had received therefrom had been used and expended by her husband; that " the said O. C. Martin has been for several years a reckless and expensive speculator and had become very heavily in debt. And after the contract was made for the land as aforesaid between said O. C. Martin and this said defendant the said Sarah E., wife of the said O. C. Martin, refused to sign and acknowledge the said deed, unless and until a provision was inserted therein securing to her one third of the value of said land for and in consideration of the money and property received and expended by her said husband as aforesaid. Therefore this provision was made in the deed for her benefit."

Immediately following this averment is the following: " This defendant denies most positively that said deed from said O. C. Martin and wife was made to him through any covin or fraud upon his part, or with any intention on his part to cheat, hinder and delay the creditors of said Martin. He denies all knowledge of any covin and fraud in the said O. C. Martin and wife, and all notice of his or her intention to cheat, hinder and delay the creditors of said O. C. Martin." He admits that Martin has been in possession of the lands since the conveyance, but says he was in possession under a contract, which he files. He says on the day the said deed was made he held the "individual paper of the said O. C. Martin for $1,500.00."

The contract exhibited with Lowry's answer is as follows: "A memorandum of agreement made and entered into this 12th day of February, 1875, between O. C. Martin of Greenbrier county, West Virginia, of the one part, and Charles A. Lowry of Fayette, West Virginia, of the other part, witnesseth: That the said O. C. Martin has this day sold the property on which he now resides to the said Charles A. Lowry, but is to live on the said property and to have the use of the whole property, and to have all that he, the said Martin, can make on said property for the term of three years; said Martin is to have the use of one yoke of oxen, the same now on the place, one mowing machine, hay rake and one steel plow; for and in consideration of the above the said O. C.

Martin is to build a fence from Jacob A. Sarbaugh's clearing to intersect the fence at the mouth of the lane, and with the road to the gate near the still-house, and is to build a kitchen, and shed the barn all around, and the said O. C. Martin binds himself, his heirs, &c., to give peaceable possession to the said Charles A. Lowry at the end of three years as above written." The contract is signed and sealed by the parties thereto.

Exhibits Nos. 2 and 3, referred to in the answer, are as follows :

No. 2.

" Received of Chas. A. Lowry, $2,500.00, it being the first payment on land, this 12th day of February, 1875.

" O. C. Martin."

No. 3.

" $500.00.

" On or before the 1st day of March next I bind myself, my heirs, &c., to pay O. C. Martin the just and full sum of five hundred dollars, it being the last payment on land, except as to dower interest of Sarah E. Martin.

" Witness my hand and seal, this 12th day of February, 1875."

Indorsed : "Credit by cash, $500.00, April 15, 1875.

"Credit by cash, $100.00, October 15, 1875."

Martin and Lowry jointly demurred to and answered the amended bill.    Martin admits the recovery of the judgment against Knapp and himself.    They reiterate the averments of their answers to the original bill, admit that Martin is still in possession of the land, but aver that he is in possession as tenant of Lowry; admit that Knapp is insolvent, but aver that this fact does not furnish any excuse for injustice to them ; admit that the $1,500.00 is still unpaid.    Depositions were taken.    The cause was heard on November 13, 1883, and the court held, that the said deed from O. C. Martin and wife to Charles A. Lowry was not fraudulent, but as to the $1,500.00 reserved to Sarah E. Martin was voluntary, and referred the cause to a commissioner to ascertain and report forthwith, what was the value of the contingent dower-interest of Sarah E. Martin, and said report having been made on November 16, 1883, the court ascertained the value of said contingent

dower-interest at $108.59, as of February 12, 1875, the date of the deed, and that two thirds thereof or $72.40 go to the children of said Sarah E. Martin, she being dead, and the other one third should go to the husband for the benefit of the plaintiff as the creditor of said Martin, and that unless said $1,500.00 less said $72.40, with interest then amounting to $2,127.07 was paid by said Lowry or some one for him within thirty days, commissioners therein appointed should sell the said land to pay the same and that when paid it should be a credit on the judgment of plaintiff against Knapp and Martin.

From this decree Lowry appealed.

Our first inquiry is: Was the deed of February 12, 1875, from Martin and wife to Charles A. Lowry made with intent to hinder, delay or defraud the creditors of said Martin, and did the grantee, Lowry, have knowledge of such intent?

The rule is well settled, that fraud may be legally inferred from the facts and circumstances of the case, when the facts and circumstances are of such a character as to lead a reasonable man to the conclusion, that the conveyance was made with the intent to hinder, delay or defraud existing or future creditors of the grantor. And where the facts and circumstances in any case are such as to make a *prima facie* case of fraudulent intent, they are to be taken as conclusive evidence of such intent, unless rebutted by other facts and circumstances in the case. (*Lockhart* v. *Beckley*, 10 W. Va. 87; *Hunter* v. *Hunter*, 10 W. Va. 321; *Martin* v. *Rexroad*, 15 W. Va. 512; *Goshorn* v. *Snodgrass*, 17 W. Va. 717; *Livesay* v. *Beard*, 22 W. Va. 585). And although a deed be made for a valuable and adequate consideration, yet if the intent of the grantor in making it be to hinder, delay or defraud his creditors, the deed is fraudulent in fact as to the grantor; and if the grantor had notice of such fraudulent intent it is also fraudulent as to him. (*Goshorn* v. *Snodgrass*, 17 W. Va. 717.)

It seems to me, that the record in this cause shows, that the deed of February 12, 1875, was made by O. C. Martin with intent to hinder, delay and defraud his creditors. He with Knapp owed the plaintiff about $1,600.00, for which they had given him their joint bond. It is admitted by Martin that Knapp is insolvent. The amended bill makes

this charge: "That the original design of O. C. Martin and Gamaliel Knapp in borrowing plaintiff's money was to defraud plaintiff; that when the money fell due according to the bond given by Knapp and Martin for the borrowed money, they again tried to defraud him in this, that Knapp had no estate, and Martin had more than enough to pay the plaintiff's debt, and about the time said money fell due, Martin conveyed by fraud and covin his whole property to his brother-in-law, defendant Lowry, and then by suppression of the truth and suggestion of falsehood, procured the plaintiff to divide the debt, and take the notes of Knapp and Martin each for one half of the debt. Upon the original bond suit at law was instituted and defendants pleaded the execution of said two notes in bar of the plaintiff's suit, and there was a replication of fraud, and the issue was found for the plaintiff and he obtained judgment for the amount of his original bond."

The answer avers: "The defendant Martin denies that he intended at any time to defraud the plaintiff out of his money, and both deny that the conveyance of the two tracts of land was made to hinder, delay and defraud him in the collection of his debts. * * * * The defendant Martin positively denies that he was guilty of or intended any fraud in the execution of the notes for the land held by the plaintiff against him and Gamaliel Knapp. He alleges that he honestly executed his note for the one half of said bond, and that he intends paying the same as soon as he is able to do so. While it is true the plaintiff recovered the judgment mentioned in the bill, it is also true that the first trial referred to in said bill resulted in favor of said defendant."

It is not here denied, that at the time the plaintiff was induced to accept the notes of Knapp and Martin, each for one half of the amount of the joint bond, Knapp was wholly insolvent; and that immediately before that transaction Martin had conveyed the whole of his property to Lowry. The other facts and circumstances in the case, which go to show that the deed of February 12, 1875, was fraudulent, affect both the grantor and grantee. One very strong circumstance is, that Martin seems to have been the active defendant in the suit, while Lowry remained passive. Lowry in his deposition says he had not read his answer filed in the suit.

When asked, " did you file an answer to the amended bill ? " answered, " I suppose my attorney did." Being asked : " Do you know the contents ot either or both of those answers ? " said : " I don't know whether I do or not." Being asked : " Have you ever been present at the taking of any depositions in this cause ?" answered, "No sir." He claims that one Joseph Coffman was a tenant on a part of the land, and says, that Martin as his agent had rented to him ; says he had not paid any rent; says, Martin tor the first three years was to improve the land and had paid no rent since; says, he was to pay Martin $4,500.00 for the land ; that he let Martin have a bond he held against him for $1,000.00, with five or six years accrued interest; that he gave him his bond for a part, and traded him paper on Austin and Harvey Handley, that " he did not assign them for the reason that Handley and he were good friends; " says : " I gave the bonds to Martin and he gave them back to me, when I went and got the money and gave it to Martin ; " that no one was present when he gave the money to Martin. These bonds on the Handley's, which he says Martin gave back to him, amounted to about $1,200.00 ; he exhibits the receipt ot Martin for the first payment on the land, which will be found in the statement. It is for $2,500.00 cash. His answer says he paid $2,500.00 down in " cash paper." Now in his deposition he says that Martin handed back to him the paper on the Handley's and he got the money and paid it to Martin.

Austin Handley says, that he owed Lowry about $800.00 ; thinks he borrowed it in 1870 ; that he paid it back just as Lowry called for it; the last he thinks was three years ago. The deposition was taken April 6, 1883. Therefore he did not pay the last of the debt, until five years after Lowry pretended to have bought the land. Being asked how many payments he had made to Lowry, said : " I don't recollect exactly how many, but probably half a dozen different payments were made on it. Just as he would want a $100.00 or a $150.00 he would let me know thirty or sixty days before he needed it and I would pay him. One. payment I think I made on a note he owed in the Lewisburg Bank ; " says he paid all the money to Lowry.

Harvey Handley says, that of the money he owed Lowry, he paid $300.00 the first time, then he made one or two other payments, and then renewed the note for $130.00, the balance in 1876.    The different payments he made a year or two before he gave the note in 1876.    Lowry never told him Martin had any interest in the money; he paid the $130.00 note in money and a bull calf valued at $40.00.    The $1,000.00, which Lowry claims to have held against Martin, is not exhibited.    He exhibits receipts for $500.00 dated April 15, 1875, and $100.00, dated October 15, 1875, or rather indorsements on the note for $500.00 which Lowry claims to have given on February 12, 1875, payable March 1, 1875, for a payment on said land.    Of course the indorsements are incorrect, or at least the last one, as the $500.00 first indorsed paid the note except the interest for forty five days.    It did not bear interest until due.    The defendants in their zeal to prove a payment on this note contradict these indorsements.

Jackson Burns in his deposition says : " I was present when Charles Lowry paid the remainder on a bond to O. C. Martin.    They asked me to count the money and interest on the bond, which I did; and as well as my recollection serves me, the money was $300.00 or $350.00, I don't recollect which.    The amount of the bond was $500.00.    The $300.00 or $350.00 was the balance of said bond."

Martin in his deposition says, the price Lowry was to pay him was $4,500.00, partly by a bond which he held on me of $1,600.00 (principal and interest amounting to $1,600.00) and by cash-paper amounting to $1,400.00, and the remainder of $1,500.00 was paid by a bond executed to Sarah E. Martin as her third of the land."    All the witnesses agree that the actual possession of the land was not changed, and had not been up to 1883.    This is another strong badge of fraud.    Added to all this J. A. Sarbaugh, a brother-in-law of Lowry, says : " I heard Charles A. Lowry say that the deed was made to keep it from being liable to Knapp's part of the Bowyer debt."

Lowry was again examined and the question asked, whether or not he ever told Sarbaugh this, and he said, " I have no recollection of telling him or anybody else any-

thing of the kind.    I recollect telling him that that was what other people said it was done for."

To my mind it is shown that this was a very crooked transaction.    I am entirely convinced that the deed of February 12, 1875, from O. C. Martin and wife to Charles A. Lowry was made with the intent to hinder, delay and defraud the creditors of said O. C. Martin, and that Charles A. Lowry, the grantee, had notice of such fraud.    The said deed is therefore declared fraudulent as to the creditors of said O. C. Martin, and the land is liable to be subjected to the debt of the plaintiff set up in this bill.

The decrees of the circuit court of Greenbrier county, rendered on the 13th and 16th days of November, 1883, are reversed, with costs to the appellee; and this cause is remanded to the circuit court of Greenbrier county, with instructions to enter a decree subjecting the said land described in said deed of February 12, 1875, to the payment of the debts of plaintiff proved in the cause, and for further proceedings to be had.

REVERSED.    REMANDED.